No. 19,552.

. AMERICAN RED BALL TRANSIT COMPANY, INC., ET AL. *v.*
INDUSTRIAL COMMISSION OF COLORADO, ET AL.
(359 P. [2d] 1018)

Decided February 27, 1961.    Rehearing denied March 20, 1961.

Mr. Darwin D. Coit, Mr. John E. Walberg, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for defendant in error Industrial Commission of Colorado.

Messrs. Kopel and Kopel, for defendant in error Bernard Hopkins.

*In Department.*

Opinion by Mr. Justice Moore.

We will refer to American Red Ball Transit Company, Inc., one of the plaintiffs in error, as American; to the defendant in error Flemming Transfer as AAA; to Bernard Hopkins, a defendant in error, as the claimant; and to the Industrial Commission of Colorado as the commission.

The action involves proceedings before the commission, instituted by claimant to secure benefits under the Workmen's Compensation Act. The commission awarded compensation and no question is raised as to whether the injuries to claimant arose out of and in the course of his employment, nor is the amount of the award in dispute. Before the commission, and again before the district court where the order of the commission was upheld, the only question was whether claimant was an employee of American, an Indiana corporation, or an employee of AAA, an Alabama corporation.

American is an interstate common carrier of household goods carrying on its business between various states under appropriate authority granted by the Interstate Commerce Commission. The business of the company is conducted under contracts executed with local intrastate carriers operating in the various states. These contracts are called Sales Agent Agreements under

which the local operators solicit interstate business for American, and the latter company compensates the former according to an agreed schedule. American does not own any van equipment of its own but leases it under written lease by the terms of which it rents truck and trailer equipment for movement of freight. This lease of equipment is usually executed with a local Sales Agent who secures the business for American. The owner of the equipment thus leased to American provides a driver for operation of the leased equipment. Once the lease of the equipment is entered into the driver of the equipment and the equipment itself are exclusively under the control of American for all purposes consistent with its business objectives until the equipment has been returned to its owner and the lease thereof terminated. Pursuant to instructions previously given, the driver of the equipment directly and daily telephones or telegraphs a dispatcher of American concerning his location en route and receives operational instructions.

The driver and the Sales Agent are compensated by receiving a percentage of any charge for transporting goods from one state to another. Of the percentage paid to the Sales Agent the operating employee receives 38%, from which he is expected to provide all expense of operating and repairing equipment and for his own maintenance while away from home. In every instance where an operating employee finds it necessary to procure additional help to load or unload, all expense of such additional help is borne by him and he is not reimbursed for said cost.

In the instant case AAA was the lessor of a tractor and trailer leased to American for a freight shipment beginning in Alabama. The driver of the equipment was a man named Hill. The van advertised in large letters on its sides the names of AAA and American. Mr. Hill, on instructions from American, procured and moved household goods in interstate commerce from Alabama to

Louisiana, to New Mexico and ultimately to Denver. Upon arrival in Denver on August 12, 1958, he contacted the claimant and secured his assistance in unloading two shipments of household goods in the Denver area. For these services claimant was paid in cash by Hill. The injuries were sustained by claimant while he was thus employed.

The findings of the commission, which are fully supported by the evidence, included, in substance, all the foregoing. It further found as a legal conclusion that American was:

" * * * an employer as defined in Section 8 (b) and Section 49 of the Workmen's Compensation Act. This Company has more than four employees engaged in the same business. It also carries out its business objectives through the device of leasing and that in the process of acting upon its leases, has maintained complete control of operators of any equipment it might rent."

The sections of the statute to which reference is made in the findings are C.R.S. 1953, 81-2-6 (2) and 81-9-1, respectively. The latter section provides in pertinent part:

"Any person, company or corporation operating or engaged in or conducting any business by leasing, or contracting out any part or all of the work thereof to any lessee, sublessee, contractor or subcontractor, irrespective of the number of employees engaged in such work, shall be construed to be and be an employer as defined in this chapter, and shall be liable as provided in this chapter to pay compensation for injury or death resulting therefrom to said lessees, sublessees, contractors and subcontractors and their employees, and such employer as in this section defined, before commencing said work, shall insure and shall keep insured his liability as herein provided and such lessee, sublessee, contractor or subcontractor as well as any employee of such lessee, sublessee, contractor or subcontractor, shall be deemed employees as defined in this chapter. * * * "

It is argued by counsel for American that Hill

was the employee of AAA. Although counsel argues otherwise, Hill unquestionably had implied authority to hire extra help when needed. The contention is that Hill being an employee of AAA, the claimant must also be found to be an employee of that company. It is true that Hill received his wages in the form of a percentage of total charges from AAA. It also is true that under the terms of the lease agreement AAA is responsible for the payment to Hill of his percentage, as wages, and also to be responsible for social security payments and income tax deductions to be made to the federal government.

■ AAA has no authority whatever to do business as a common carrier in interstate commerce. The driver Hill and the equipment were admittedly under the exclusive control, and subject at all times to the exclusive direction, of American.

"The operation of the truck was, in law, under the supervision and control of the interstate franchise carrier and could be lawfully operated only by those standing in the relation of employees to the authorized carrier." *DeBerry v. Coker Freight Lines,* 234 S.C. 304, 108 S.E. (2d) 114.

■ While admittedly AAA was the general employer of Hill under the circumstances disclosed by the record before us when he began the interstate journey in consummation of the business objectives of American, he became a special employee of that company so far as liability for payment of workmen's compensation is concerned. *Patton v. Patton* (Mo.), 308 S.W. (2d) 739.

■ American and AAA could not by contract between themselves destroy the legal rights of claimant to receive workmen's compensation as provided by the statutes of this state.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DAY concur.