**J. C. DUKE, Plaintiff-Appellant,**

**v.**

**William Jessie THOMAS and Middlewest Freightways, Inc., a Corporation, Defendants-Respondents.**

**No. 30614.**

St. Louis Court of Appeals.

Missouri.

Feb. 27, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied March 24, 1961.

Strubinger, Tudor, Tombrink & Wion, and Ralph K. Soebbing and H. P. Tudor, St. Louis, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, and F. X. Cleary and C. M. Kirkham, St. Louis, for defendants-respondents.

DOERNER, Commissioner.

This action for damages arose out of a collision between two tractor-trailers, one owned and driven by plaintiff, and the other owned and driven by defendant Thomas. The accident occurred on December 11, 1957, about 11:00 P.M., at a point on U. S. Highway 40 approximately 4½ miles west of Kingdom City, Missouri, when defendant Thomas' rig, eastbound, crossed the centerline of the highway and struck plaintiff's westbound equipment. Defendant Thomas defaulted below, and the trial resulted in a verdict and judgment for plaintiff against both defendants in the sum of $7,000. Defendant Middlewest Freightways, Inc., hereafter referred to as Middlewest, filed a timely motion for judgment, notwithstanding the verdict, which the court sustained, and plaintiff appealed.

At the outset of our consideration of this case we are confronted by the motion of Middlewest to dismiss plaintiff's appeal. As Middlewest points out, under "Points and Authorities" in his brief, plaintiff set out only abstract statements of law, in violation of Rule 83.05(e), Rules of Civil Procedure, V.A.M.R. But it is readily apparent from other parts of plaintiff's brief that the action of the court claimed to be erroneous was that of setting aside the judgment for plaintiff and entering judgment in favor of Middlewest; the reasons why such action was erroneous likewise are stated; the appeal is meritorious, and in the interests of justice we should exercise the discretion given us by Rule 83.09 and overrule the motion.

No issue was raised by Middlewest in its motion as to the negligence of Thomas. In substance, the grounds thereof were that it was not the master of Thomas, and had no right of control over him at the time of the accident, and it is on that fundamental question that the parties differ. It appears from the record that Middlewest was a Missouri corporation, and that it operated as a common carrier, under both Interstate Commerce Commission and state permits, in Missouri, Illinois, Indiana, Kentucky, Kansas and Oklahoma. Thomas owned a Ford tractor and a Fruehauf trailer, and lived in Louisville, Kentucky, where Middlewest operated a terminal. By a written contract dated December 9, 1957, executed in Louisville, Thomas leased his tractor and trailer to Middlewest for a period of 30 days from that date, to be used to transport for hire property from Louisville, Kentucky to Kansas City, Missouri. The agreement further provided that:

"4. This transfer of equipment under this lease shall take place at Louisville, Kentucky, an origin point served by the authorized carrier Lessee.

"5. It is understood that the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shippers, and the Interstate Commerce Commission.

\* \* \* \* \* \*

"10. For and in consideration of the leasing of the equipment (and the services of the driver of said equipment) used, the Lessee agrees to pay to the Lessor 10.00 per ton dollars (sic).

\* \* \* \* \* \*

"13. The Lessor agrees to deliver to the Lessee the above equipment in good running order and condition; maintain the same in good working condition, furnishing all necessary oil, gasoline, tires, and repairs for the operation of said equipment and to pay all other expenses incident to such operation.

"14. The Lessor shall surrender full control, possession, and management of said equipment to the Lessee during the term of this lease which

shall start at delivery of equipment and end with delivery of cargo at destination and the Lessee shall pay the driver for his services, and shall withhold any withholding or social security tax required by the U. S. government."

Roy B. Chipps, secretary-treasurer of Middlewest, who was called to the stand by plaintiff and identified the instrument, testified that except for an understanding that Thomas was to drive his equipment, the written lease embodied the entire agreement between the parties.

It further appears from the record that Thomas left Louisville, Kentucky, on December 9, 1957, at 8:00 P.M., with a cargo of freight obtained from Middlewest, destined for Kansas City, Missouri. Middlewest furnished Thomas with a plastic sign, which was taped on to his tractor, evidencing its name and its I.C.C. permit, and supplied him with written certificates of its authorities for the states of Illinois and Indiana, to cover the route Thomas was to travel. According to the trip log Thomas kept, he arrived at Middlewest's terminal in St. Louis on December 10, at 8:00 A.M., and left the same day at 4:00 P.M. Upon reaching St. Louis it was found that Thomas did not have a decal required by the Missouri Public Service Commission and one was purchased from Brashear Truck Co., a neighboring concern, for $25. From St. Louis, Thomas traveled over U. S. Highway 40 to Kansas City, for his log shows that he stopped for a half hour at Columbia, and that he reached Middlewest's terminal in Kansas City at midnight of December 10. The Kansas City office of Middlewest paid Thomas a total of $157.84 for the haul, by giving him one check for $132.84, and a second for $25 which he endorsed and returned to it, to be sent to Brashear Truck Co. in payment of the decal purchased in St. Louis. Thomas returned to Middlewest the plastic sign which had been taped on to his tractor.

Middlewest points to the evidence that Thomas had completed the delivery of the freight; that he had been paid for his services and had returned the signs he had displayed; and to the testimony of Chipps that Thomas was free to enter into another lease, to carry exempt commodities, or to go anywhere he wished. From this it contends that it had relinquished any right of control over Thomas and his equipment to which it might have been entitled under the lease. The initial question presented, therefore, is whether the lease was in full force and effect at the time the accident occurred.

Following the passage of the Motor Carrier Act, 1935, 49 U.S.C.A. § 302, and similar state legislation, Sec. 390.011, RSMo 1949, V.A.M.S., a wide-spread practice developed among authorized common carriers of property for hire of using non-owned equipment. *American Trucking Associations, Inc. v. United States*, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337. Among other methods·of engaging such equipment were various kinds of leases, including what came to be called a "one-way lease," by which a lessor-owner leased his equipment to the carrier for the transportation of freight from one designated point to another, and agreed to drive the equipment himself, or to furnish a driver. The economic abuses and the legal problems which resulted from the practice are thoroughly reviewed and discussed in *American Trucking Associations, Inc. v. United States*, supra, and 43 Iowa Law Review 531. Among other questions which arose from such practice was whether the common carrier was liable for the torts of the lessor-driver of the motor vehicle. By an extension of the doctrine which had been applied to railroads and other public utilities, our courts, as did those of most other states, held that an authorized motor carrier could not delegate the performance of its chartered and franchised duties to an independent contractor and thereby evade liability for injuries resulting from his negligence. *Cotton v. Ship-By-Truck Co.*, 337 Mo. 270, 85 S.W.2d 80; *State ex rel. Algiere v. Russell*, 359 Mo. 800,

223 S.W.2d 481; Van Hook v. Strass- berger, Mo.App., 259 S.W.2d 399; 57 C.J.S., Master and Servant, § 591, p. 368. However, while the defense of independent contractors was thus denied the carrier when the lessor-owner, under a one-way lease was engaged in carrying the freight on his outbound journey, the question re- mained whether, since the lease was no longer effective, the common carrier was liable for a tort committed by the lessor- owner on the return trip. In the leading case on the subject, Costello v. Smith, 2 Cir., 179 F.2d 715, 16 A.L.R.2d 954, it was held that since the lessor-driver had per- formed his contract and was no longer engaged in the business of the carrier, on general principles of agency the lessor- driver's negligence could not be imputed to the carrier. Recognizing the problem created by the effect of its decision, the court there said (179 F.2d 717, 718):

"* * * So far as concerns the safety of the public, determination of what regulation is required rests with the (Interstate Commerce) Commis- sion; the legislative grant is not to the courts. So long as properly consti- tuted authority is content not to regu- late further than it has the operation of empty trucks after the termination of a 'one-way lease,' the courts may not properly by judicial decision sup- plement the Commission's regulations. * * * Nor do the present regula- tions forbid a common carrier such as Johnson from making a one-way lease with an independent contractor such as Withers. In the absence of statutory command or of regulatory action by the Commission, we cannot say that a one-way lease is so far contrary to the policy of the Act that a court should impose liability on the lessee after the lease has ended."

As a matter of historical interest, the Interstate Commerce Commission had rec- ognized the varied problems incident to the use by motor carriers of non-owned equipment as early as 1940, and had held hearings on the subject, but the occurrence of World War II and other reasons de- layed the adoption of appropriate regu- lations until May 8, 1951. As plaintiff points out, under the present rules of the Interstate Commerce Commission, 49 C.F.R., Sec. 207.4, an authorized motor carrier may perform transportation with non-owned equipment only under certain conditions: (1) That a written contract be entered into between the carrier and the owner of the equipment; (2) that when the equipment is to be operated by the owner or his employees the lease shall be for a period of not less than 30 days; and (3) that the lease "Shall provide for the exclusive possession, control, and use of the equipment, and for the complete as- sumption of responsibility in respect there- to, by the lessee for the duration of said contract, lease or other arrangement." The authority of the Commission to adopt these rules for the purposes of abolishing one-way leases was sustained in American Trucking Associations, Inc. v. United States, supra.

■ The relationship and liability of Middlewest in this case must be determined in the light of the terms of the lease en- tered into with Thomas. The testimony of Chipps was nothing more than his con- struction and interpretation of the lease. Marriott v. National Mut. Cas. Co., 10 Cir., 195 F.2d 462. While the printed form used in the instant case complies, in the main, with the requirements of the fore- going rule, it seems apparent that an at- tempt was made therein, particularly in paragraph 14, to circumvent the rule. That paragraph provides that the lessor shall surrender full control, possession and man- agement of the equipment to the lessee "during the term of this lease which shall start at delivery of equipment and end with delivery of cargo at destination * * *." Presumably it was that part of the lease which Chipps had in mind when he tes- tified, in effect, that Middlewest had no right of control over Thomas after Thomas had delivered the freight in Kansas City.

That provision, however, was a patent attempt to limit the duration of the lease to a one-way lease. It is obviously in conflict with the earlier provision that the duration of the lease was to be for 30 days. Of greater importance, it is also directly contrary to the foregoing rule of the Interstate Commerce Commission, and therefore null and void, Costello v. Smith, supra. While it may be true that a lessor-owner and a lessee-carrier may terminate a lease for a good and sufficient reason, no such reason was shown in this case. To sustain the position of Middlewest that it had "relinquished" its right of control over Thomas, and that he was free to do as he pleased, would be tantamount to countenancing the very practice of one-way trip leasing forbidden by the Commission. Under the regulations of the Commission, Middlewest could not enter into a lease with Thomas for less than 30 days and the lease they executed so provided. Under the regulations of the Commission and the terms of the lease Middlewest was in exclusive possession, control, and use of the equipment, and had assumed responsibility for the negligent acts of Thomas for that period of time. Hence it had the right of control over Thomas and his equipment on the return trip to Louisville, as well as on his journey from Louisville to Kansas City. Cotton v. Ship-By-Truck Co., supra; Marriott v. National Mut. Cas. Co., supra; American Transit Lines v. Smith, 6 Cir., 246 F.2d 86, 87; Hodges v. Johnson, D.C. W.D.Va., 52 F.Supp. 488.

 Middlewest also argues that there was no evidence that Thomas was, in fact, on his way to Louisville at the time the accident occurred, and hence that the evidence was insufficient to show that Thomas was then acting within the scope of his employment. Van Hook v. Strassberger, supra; Randall v. Steelman, Mo.App., 294 S.W.2d 588, and Stone v. Reed, Mo.App., 247 S.W.2d 325, are cited in support of this argument, but in all those cases the uncontradicted evidence clearly showed that the servant was engaged in a purely personal mission of his own, and was not performing some service for his master. It is true that there is no direct evidence in the record that Thomas was on his way to Louisville. However, the alleged fact that an employee was acting within the scope of his employment need not be shown by direct evidence, but may be established circumstantially. Hopkins v. J. I. Case Company, Mo., 293 S.W.2d 402. Chipps testified that Middlewest was dependent upon Thomas to let Middlewest know when he returned to Louisville. Under the lease, Thomas was to be compensated only upon the basis of the freight carried from Louisville to Kansas City, so that it obviously was to his advantage to return to Louisville as soon as possible. The undisputed evidence was that on the trip from Louisville to Kansas City, Thomas had traveled from St. Louis to Kansas City over U. S. Highway 40. Presumably this was the regular route specified in Middlewest's Federal and Missouri permits. 49 U.S.C.A. § 308; Sec. 390.051 and 390.070, RSMo 1949, V.A.M.S. At the time of the accident Thomas was retracing the same route. Bearing in mind that Thomas was the servant of Middlewest for the duration of the lease, we think the evidence was sufficient to present an issue of fact for the jury as to whether at the time of the accident he was acting within the scope of his employment. Wrightsman v. Glidewell, 210 Mo.App. 367, 239 S.W. 574.

For the reasons stated, the Commissioner recommends that the motion of Middlewest to dismiss the appeal be overruled, that the judgment in favor of Middlewest be reversed, and that the cause be remanded with directions to reinstate the verdict and judgment in favor of plaintiff and against Middlewest.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the motion of Middlewest to dismiss the appeal is overruled, judgment in favor of Middlewest is reversed and the cause remanded with directions to reinstate verdict and judgment in favor of plaintiff and against Middlewest.

ANDERSON, P. J., WOLFE, J. and SAM C. BLAIR, Special Judge, concur.