Leland E. WEEKS, Sr. and
Mildred Weeks

v.

William R. KELLEY and Currier
Leasing, Inc.

v.

MERRILL TRANSPORT CO.

Supreme Judicial Court of Maine.

Sept. 6, 1977.

Berman, Berman & Simmons, P. A. by Jack H. Simmons, Lewiston, for plaintiff.

Wathen & Wathen by Malcolm L. Lyons, Augusta, Richardson, Hildreth, Tyler & Troubh by Robert L. Hazard, Ronald D. Russell, Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

ARCHIBALD, Justice.

This appeal requires us to determine whether it was error to dismiss Currier Leasing, Inc.'s (Currier) amended third party complaint against Merrill Transport Co. (Merrill) for "failure to state a claim upon which relief can be granted." Rule 12(b)(6), M.R.C.P.

We conclude the dismissal was error and we sustain Currier's appeal.

## FACTS

From the pleadings the following facts emerge. Leland Weeks and William Kelley were involved in a motor vehicle accident. At the time of the accident Kelley was operating a tractor-trailer "rig." The tractor was owned by Currier, but the trailer attached thereto was owned by Merrill. Currier had previously leased its tractor with its operator, Kelley, to Merrill who, at the time of the accident, was using the leased equipment "exclusively" in its business. It is alleged that "at all times pertinent . . . Merrill . . . was a common carrier holding a certificate of public convenience and necessity from the Interstate Commerce Commission and operating under said certificate."

Weeks and his wife had commenced a civil action against Currier, seeking damages for injuries allegedly sustained as a result of Kelley's operation of the tractor-trailer, premised on the theory that Currier was vicariously liable for Kelley's negligent acts.

Subsequently, Currier filed a third party complaint against Merrill pursuant to Rule 14(a), M.R.C.P. As later amended, the complaint alleged that Merrill was liable to Currier "for any and all sums which may be recovered against . . . Currier . . . in favor of plaintiffs, Leland E. Weeks, Sr., and Mildred Weeks."

On the day set for trial of the plaintiffs' action against Currier, the Weekses accepted the sum of $70,664.07 in full settlement of their claims.[1] Currier then further amended its third party complaint to allege the fact that this settlement had been made "with the consent . . . and . . . approval" of Merrill, and demanded judgment against Merrill in the amount of the settlement. After a hearing Merrill's 12(b)(6) motion to dismiss the amended complaint was granted, and it is this ruling that forms the basis of Currier's appeal.

It is Currier's contention that regulations promulgated by the Interstate Commerce Commission (ICC), as well as the language of its lease with Merrill, give it the right to recover from Merrill the amount of the settlement. Merrill, on the other hand, maintains that no such cause of action exists since, in settling with the Weekses, Currier acted as a volunteer.

## THE ICC REGULATIONS

Acting pursuant to 49 U.S.C.A. § 304(e), the ICC adopted regulations governing the leasing of motor vehicles by licensed motor carriers. The leasing arrangement between Merrill and Currier was subject to these regulations. As contained in 49 C.F.R. § 1057.4 the regulations mandate that the lease be in writing and that it

"provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said . . . lease . . . . ."

The constitutional validity of these regulations has been upheld by the United States Supreme Court. See American Trucking Ass'ns v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953). The reasons underlying the enactment of the ICC regulations have often been examined. See, e. g., Simmons v. King, 478 F.2d 857, 865–67 (5th Cir. 1973); Cosmopolitan Mutual Ins. Co. v. White, 336 F.Supp. 92, 97–98 (D.Del.1972). As stated by the Fifth Circuit Court of Appeals in Simmons v. King, supra, at 866–67, the regulations were designed

---

1. Kelley was also joined personally as a party defendant, and he was likewise released as a result of the settlement. The damages claimed by Weeks were $200,000.00 and his wife's action for loss of consortium had an ad damnum of $25,000.00.

"to correct abuses that had arisen under often fly-by-night arrangements with consequent damage to the development and maintenance of a sound transportation system and to the public interest from a helter-skelter operation of thousands of unregulated vehicles on the highways as a menace to safety.

One way to assure responsibility was to impose on the certificated carrier the full responsibility for the entire operation of temporarily leased equipment . . . ."

*Accord, Cox v. Bond Transportation, Inc.,* 53 N.J. 186, 249 A.2d 579 (1969); 3 U.S.Code Cong. & Ad.News pp. 4304, 4307 (1956).

■ It seems apparent that Merrill, as lessee of Currier's tractor and employee, was liable, *as a matter of law,* for any *negligence* attributable to Kelley while operating the leased equipment, but we stress the point that Merrill's liability is not premised on traditional concepts of master-servant or employer-employee relationships. *See Cosmopolitan Mutual Ins. Co. v. White,* 336 F.Supp. at 99. *See also Simmons v. King,* 478 F.2d at 867. Rather, liability arises by virtue of the ICC regulations, which have the force and effect of law. Given their plain and ordinary meaning, the words utilized in Section 1057.4, obligating the lessee to assume "complete . . . responsibility in respect [to the leased equipment]," statutorily create a relationship between the lessee carrier and the operator of the leased equipment comparable to that of employer-employee, at least while the equipment is engaged in the carrier's business. *Cox v. Bond Transportation, Inc., supra* at 589. Thus, Kelley must be considered as if he were an employee of Merrill, not because Merrill hired him but because of the ICC regulation.

Currier asserts that under the terms of the lease entered into by the parties, it has a cause of action against Merrill to recover the amount of the settlement made with the Weekses. The second paragraph of that lease provides:

2. That such an indemnification provision in an ICC regulated lease is valid was determined by the United States Supreme Court in *Trans-*

"It is understood that the leased equipment under this agreement is in the possession, control and use of the authorized carrier lessee and that the lessee assumes full responsibility in respect to the equipment it is operating to the public, the shippers, the Interstate Commerce Commission and the Department of Transportation."

Inclusion of this provision in the lease is mandated by the ICC regulations. *See* 49 C.F.R. § 1057.4(4).

The parties have not cited any case, nor has our research disclosed any, which addresses the precise issue now before us, i. e., whether a lessor of motor carrier equipment may maintain an action for indemnification against a lessee on the basis of the lease provision quoted above.

We conclude, however, that such an action may be maintained.

■ Both the ICC regulations and the lease unequivocally mandate that the lessee assume "full responsibility" for the operation of the leased equipment which, by giving words their ordinary meaning, require the lessee to bear the financial consequences of any negligence in the operation of the leased equipment while being used in the lessee's business. *Cf. Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.,* 423 U.S. 28, 96 S.Ct. 229, 235, 46 L.Ed.2d 169 (1975). In the absence of any indemnification agreement[2] in the lease providing otherwise, the lessee remains contractually (as well as statutorily) responsible for injuries sustained by the travelling public as a result of the negligent operation of the equipment. Currier, as lessor, may enforce that contractual obligation. While it is true that ICC regulations expressly require the lease to contain the "full responsibility" provision, that does not mean that when such language appears in a lease it relieves the parties from being in compliance with the regulations.

*american Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., supra.*

Nevertheless, Merrill suggests that since it was potentially liable to the Weekses as a matter of law, Currier was under no legal obligation to settle with them, and in doing so, it acted as a volunteer. *See, e. g., Paro v. Pennsylvania R. R. Co.,* 348 S.W.2d 613, 616 (Mo.App.1961); *Southern California Gas Co. v. Ventura Pipe Line Construction Co.,* 150 Cal.App. 253, 309. P.2d 849, 852 (1957).

■ Although the federal regulations impose upon Merrill liability as a matter of law, Currier is not thereby immune from its own liability under applicable principles of state law. As we have pointed out, Merrill's liability and ultimate responsibility is based on the fact that by operation of the ICC regulations it became, in effect, the statutory employer of Kelley. *See, e. g., Cox v. Bond Transportation, Inc., supra* 249 A.2d at 587; *Brannaker v. Transamerican Freight Lines, Inc.,* 428 S.W.2d 524, 535 (Mo.1968). Currier, however, could have exercised such a *practical* control over Kelley as to subject it to liability under *state* law concepts of vicarious liability. Neither the ICC regulations nor the terms of the lease afford Currier "an automatic insulation from [this] liability." *Simmons v. King, supra* 478 F.2d at 867. Therefore, since Currier could be potentially liable under Maine law for the alleged negligence of Kelley, it did not become a volunteer by the act of settling the state court action with the Weekses.

This is not to say, however, that Currier could not be deemed a volunteer once the issue of Kelley's negligence has been determined. Merrill's liability can arise only if Kelley (1) was guilty of negligence (2) that was greater than that of Weeks and (3) that proximately caused the accident.[3] Because Currier settled prior to trial, this determination was never made. If Kelley were free from negligence or if his negligence were equal to or less than Weeks', neither Merrill nor Currier would have incurred liability. If such be the case, a fact finder under appropriate instructions might find Currier's unilateral act of settling with the Weekses to be that of a volunteer, and Merrill would not be responsible to Currier for the amount of the settlement. Conversely, the opposite result is likewise possible.

Since Currier's amended third party complaint did contain factual allegations which, if proved, would have entitled it to relief against Merrill, its dismissal on a 12(b)(6) motion was error. *Ace Ambulance Service, Inc. v. City of Augusta,* 337 A.2d 661 (Me. 1975); *Richards v. Ellis,* 233 A.2d 37, 38 (Me.1967). *See also Nelson v. Times,* 373 A.2d 1221 (Me.1977).

The entry is:

Appeal sustained.

All Justices concurring.

---

3. *See* 14 M.R.S.A. § 156 (Comparative Negligence Act).