602 P.2d 195

Jerome D. MATKINS, Administrator of
the Estate of Johnny Lee Smith,
Deceased, Plaintiff-Appellant,

v.

ZERO REFRIGERATED LINES, INC., a
foreign corporation, and Jack D.
Browning, Defendants-Appellees.

No. 3449.

Court of Appeals of New Mexico.

July 26, 1979.

Rehearing Denied Aug. 10, 1979.

W. T. Martin, Jr., Matkins & Martin, Carlsbad, for plaintiff-appellant.

Lawrence H. Hill, Civerolo, Hansen & Wolf, Albuquerque, for defendants-appellees.

## OPINION

WALTERS, Judge.

Plaintiff-appellant, as administrator of the estate of Johnny Lee Smith, appeals from the order of the trial court granting summary judgment in favor of defendants Browning and Zero Refrigerated Lines, Inc. (Zero) in this wrongful death action. We reverse the summary judgment entered in favor of Zero and affirm the summary judgment granted to Browning.

Appellant's deceased and Browning were employed as truck drivers by R & M Truck Company (R & M). R & M entered into a lease agreement with Zero, a licensed interstate common carrier, by which R & M agreed to furnish a truck and two drivers

and Zero agreed to furnish the trailers for transporting commodities. Zero, as the holder of an ICC license, was the authorized entity to engage in transportation in interstate commerce. Under the negotiated leasing contract, R & M had sole responsibility for hiring, firing, directing and training the drivers, paying their wages, and providing for unemployment and workmen's compensation benefits. R & M was to be paid by the mile upon submitting documentation to Zero of its performance of the contract. R & M paid all expenses, including maintenance, operation costs and fees. It is not clear from the record to whom the drivers reported on a regular basis for instructions concerning the kind and destination of the commodities they delivered. The record does indicate, however, that R & M maintained all records on deliveries.

On November 12, 1973 Smith was killed while riding as a passenger in the leased truck, driven by Browning, when the truck failed to negotiate a curve and overturned. It is not disputed that Smith was killed during the course of his employment.

▮ Appellant filed this wrongful death action charging Zero with liability for the negligence of Browning, as its agent, and Browning for his own negligence. Appellees denied liability and moved for summary judgment, resting on the pleadings. Summary judgment is proper when there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. N.M.R.Civ. 56(c), N.M.S.A.1978. Where, as here, the motion is made solely on the pleadings without supporting affidavits, it serves the same function as a motion for judgment on the pleadings. N.M.R.Civ. 12(c), N.M.S.A.1978. *See Valdez v. City of Las Vegas*, 68 N.M. 304, 361 P.2d 613 (1961). The appellees actually admit, for purposes of the summary judgment motion, the veracity of the allegations in the complaint and argue that even under the facts as alleged appellant is not entitled to relief. *See Worley v. United States Borax and Chemical Corp.*, 78 N.M. 112, 428 P.2d 651 (1967). In deciding this case, we

therefore consider the facts pleaded as undisputed and determine if a basis is present to decide the issues as a matter of law.

Assuming the facts recited above are true, the trial court must have based its decision on the determination that (1) Smith (deceased) and Browning were employees of Zero; thus, appellant's exclusive remedy was under the Workmen's Compensation Act; or (2) if Smith and Browning were employees of R & M, the negligence of Browning, as an employee of R & M, could not be imputed to Zero.

▮ As a preliminary matter, it must be pointed out that the exclusivity provision of the Workmen's Compensation Act does not preclude an employee or his estate from seeking damages against a third party who is not an employer, coemployee, or insurer or guarantor of his employer, § 52–1–6, N.M.S.A.1978. Thus, although the estate of deceased had received workmen's compensation benefits from R & M by means of a settlement agreement, appellant is not denied the right to bring suit against a third-party tortfeasor. Moreover, R & M's compensation carrier may gain the right of reimbursement from Zero depending on the success or failure of plaintiff at trial. § 52–1–56 N.M.S.A.1978; *Reed v. Styron*, 69 N.M. 262, 365 P.2d 912 (1961).

*Employer-Employee Relationship*

Appellees assert that the ICC regulations regarding leasing of vehicles for use in interstate transportation of goods, 49 C.F.R. §§ 1057.1 through 1057.6, are controlling in this situation and create an employer-employee relationship as a matter of law. Section 1057.4(a)(4), promulgated under 49 U.S.C. § 304(e), requires as a condition for licensed lessee-carriers to "perform authorized transportation in or with equipment which they do not own," that the contract with the lessor of the equipment

> [s]hall provide for the exclusive possession, control and use of the equipment, and for the complete assumption of responsibility thereto, by the lessee for the duration of said contract . . .

The cases cited by appellees relating to the ICC regulation were not concerned with the liability of the lessee to the worker as that liability might be affected by a claim for workmen's compensation benefits. In *Weeks v. Kelley*, 377 A.2d 444 (Me.1977), the court held that the common carrier-lessee was liable, as a matter of law, for any negligence attributable to the driver while operating leased equipment. Although the court determined that the ICC regulation "create[d] a relationship between the lessee carrier and the operator of the leased equipment comparable to that of employer-employee," *id.* at 447, it emphasized that the liability was for *negligence*. Nothing was said in *Weeks* about a conflicting employer-employee status resulting from application of a workmen's compensation law and, therefore, it is not helpful in analyzing the issue before us.

Appellees also refer us to a United States Supreme Court case, *Transamerican Freight Lines, Inc. v. Brada-Miller Freight Systems, Inc.*, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975), which indicates that the carrier-lessee has the obligation of control and responsibility for operation of the equipment imposed by the ICC regulation; and they urge us that, by implication, Zero must be considered Smith's employer and thus subject only to a workmen's compensation claim. The Court's decision, however, focused on the development of the ICC regulation to satisfy the need for making and keeping the carrier-lessee "responsible to the public, the shipper, and the Commission." 423 U.S. at 39, 96 S.Ct. at 235. It was held in *Transamerican, supra*, that an indemnity clause directed toward the lessor's negligence did not conflict with the safety concerns of the ICC regulations. The question we are faced with, i. e., a third-party tort action, in addition to a workman's compensation claim, never arose.

Zero and R & M complied with the ICC regulation, as evidenced by ¶ 3 of their contract:

The CARRIER shall have such exclusive possession, control and use of the CONTRACTOR'S equipment and shall assume responsibility in respect thereto to the extent required by the rules and regulations of the Interstate Commerce Commission and the Federal Highway Administration.

However, Zero passed on to R & M any responsibility it might have had to the deceased for workmen's compensation benefits, in ¶ 6:

The CARRIER shall not be responsible for Workmen's Compensation Insurance covering the CONTRACTOR, its drivers, helpers and laborers. Such matters are the sole and exclusive responsibility and liability of the CONTRACTOR.

Appellees reason that since New Mexico case law emphasizes the right of control in determining if a worker is an employee, *Yerbich v. Heald*, 89 N.M. 67, 547 P.2d 72 (Ct.App.1976), we should be persuaded by those cases which hold that the ICC regulation creates a right of control in the lessee and thus an employer-employee relationship, and conclude such an employer-employee relationship as a matter of law for all purposes, even for the purpose of workmen's compensation law.

We must acknowledge first, however, that the New Mexico courts have repeatedly held that the employment status of a worker must be determined on a case-by-case basis. *Shipman v. Macco*, 74 N.M. 174, 392 P.2d 9 (1964); *Burruss v. B. M. C. Logging Co.*, 38 N.M. 254, 31 P.2d 263 (1934).

Secondly, although the major test which has emerged in New Mexico for determining status of employment is right of control of the details of the work, *Shipman v. Macco, supra*, that test is considerably modified when the work involved is "hauling." Hauling of material to or from a work site is more analogous to the lessee-carrier situation presented here than are those cases in which a worker employed by one person goes to work on the premises of another person. We must draw on the former type of cases for our resolution of this appeal. In *Abbott v. Donathon*, 86 N.M. 477, 525 P.2d 404 (Ct.App.1974), where the alleged employee was killed while hauling material

in his own truck for the defendant, this court observed:

> We feel that the power of termination is of great importance in this case because the facts are so similar to those in *Burruss*. That case also involved an alleged employee who was killed while hauling material in his own truck. In that case there was the same lack of "superintendence" or of "authoritative control," which defendants rely upon here. In cases involving hauling there is likely to be little actual direction other than as to time and place. Since the factor of actual control of details, often relied upon by courts in resolving this same issue, is not likely to be helpful here, the importance of other tests, such as power of termination and method of payment, is magnified.

86 N.M. at 478–479, 525 P.2d at 405–406.

Whether the test applied is right of control or consideration of other factors, R & M remains the factual employer of Smith and Browning. R & M had the power to terminate the drivers; Zero had no power to prevent R & M from retaining Browning as its employee. The contract provided that R & M should choose the routes, the numbers' of drivers and helpers, the rest stops and points of service. It further provided that R & M should determine the method and means of performing the contract in addition to having responsibility for the direction and control of the drivers.

We realize that some courts have come to a different conclusion about the relationship of carrier-lessees to drivers. *See American Red Ball Transit Co. v. Industrial Com'n*, 145 Colo. 509, 359 P.2d 1018 (1961); *DeBerry v. Coker Freight Lines*, 234 S.C. 304, 108 S.E.2d 114 (1959). However, in addition to there being support in other jurisdictions for our position, *see Reed v. Industrial Com'n*, 23 Ariz.App. 591, 534 P.2d 1090 (1975) and *Miller v. Barnett*, 285 P.2d 233 (Okl.1955), we note the significant difference in the workmen's compensation coverage of those cases and we are particularly persuaded by the fact that Zero here contracted away its burden of providing workmen's compensation insurance.

Simply because the contract gave Zero that control necessary to meet the requirements of the ICC regulations does not, as a matter of law, make Zero the employer for purposes of invoking the provisions of our Workmen's Compensation Act to avoid a common-law suit. Under ¶ 6 of the contract Zero received the benefit of someone else paying workmen's compensation benefits to injured employees or to the estates of deceased employees. It also assumed the detriment of not being able to claim for itself the exclusive remedy section of the Workmen's Compensation Act when one of the drivers was injured or killed. § 52–1–8, N.M.S.A.1978. Although an employer cannot avoid his liability under the Workmen's Compensation Act by stating in a contract that the worker is not an employee but an independent contractor, *Reichart v. Jerry Reece, Inc.*, 504 S.W.2d 182 (Mo.App.1973) and *see Yerbich v. Heald*, 89 N.M. 67, 547 P.2d 72 (Ct.App.1976), in this case the contract provisions are evidence of Zero's bargained-for waiver of the benefits of the Workmen's Compensation Act, and Zero's purposeful subjection of itself to common-law liability for negligence. By relieving itself of the burdens of meeting the statutory obligation to provide workmen's compensation coverage, Zero relinquished to R & M the sole right to invoke the exclusionary provisions of New Mexico's Workmen's Compensation Act.

We hold, therefore, that based on the relationship of Smith and Browning to R & M; the relationship of R & M to Zero as evidenced by the record and, particularly, by the contract; and the contractual undertaking by R & M to provide workmen's compensation insurance for its drivers, Smith and Browning were employees of R & M with respect to rights and duties created by the Act, and that plaintiff is not precluded from bringing a wrongful death action against Zero.

In so holding, we emphasize that we are not addressing the status of the lessee-carrier as the employer for workmen's compensation purposes when it has not contracted

away its workmen's compensation obligations.

*Negligence of Browning Imputed to Zero*

After determining that Smith and Browning are employees of R & M and not Zero, we are confronted with the question of whether the negligence of one not an employee of a company may be imputed to that company. The basis for Zero's liability is found in the ICC regulations discussed above.

■ Since, at the time of the accident, Zero was an interstate trucking company licensed by the Interstate Commerce Commission, it was subject to the rules and regulations promulgated by that commission. We are concerned here with the rule cited above, 49 C.F.R. § 1057.4(a)(4), requiring that, under lease agreements, the lessee-carrier have full direction and control of leased vehicles and be fully responsible for their operation "as if they were the owners of such vehicles . . ." *Proctor v. Colonial Refrigerated Transportation, Inc.*, 494 F.2d 89 (4th Cir. 1974).

Appellant argues that this appeal is controlled by *Proctor, supra*, in which the court faced a similar question: whether a licensed interstate carrier is liable to an employee of a lessor for injuries resulting from the negligence of the lessor-driver in the operation of his equipment in the business of the carrier-lessee. The facts in *Proctor* differ from those presented here only in that the negligent driver, Boles, was also the owner-lessor of the equipment rather than a driver employed by the lessor. The injured workman was an assistant driver hired by Boles, riding as a passenger in Boles's tractor-trailer at the time of the accident.

In finding that the lessee-carrier was liable to the passenger for the negligence of the driver, the *Proctor* court based its decision on the supervision and control requirement of the ICC regulation, § 1057.4(a)(4), stating:

These regulations were promulgated by the Commission to correct widespread abuses incident to the use of leased equipment by the carriers, . . . and "the intent [of the regulations] was to make sure that licensed carriers would be responsible in fact, as well as in law, for the maintenance of leased equipment and the supervision of borrowed drivers.", *Alford v. Major*, 470 F.2d 132, 135 (7 Cir. 1972). The statute and regulatory pattern clearly eliminates the independent contractor concept from such lease arrangements and casts upon [the carrier] full responsibility for the negligence of [the driver] of the leased equipment.

*Id.* at 91–92.

The holding in *Proctor* is still valid, contrary to appellees' contention that *Alford v. Major*, 470 F.2d 132 (7th Cir. 1972), cited in the *Proctor* decision, was overruled by the Supreme Court in *Transamerican Freight Lines, Inc. v. Brada-Miller Freight Systems, Inc., supra*. In *Transamerican*, the Court noted that the Seventh Circuit itself had modified its position in *Alford* regarding indemnification (423 U.S. 34 at n. 6, 96 S.Ct. 232 at n. 6), but the result in the *Alford* case had no bearing whatever on the *Proctor* decision. However, neither *Proctor* nor *Transamerican* grappled with a compensation claim and a tort claim and the complexities therein recognized in this jurisdiction in such decisions as *Kandelin v. Lee Moore Contracting Co.*, 37 N.M. 479, 24 P.2d 731 (1933), and *Castro v. Bass*, 74 N.M. 254, 392 P.2d 668 (1964), as well as the "hauling" cases discussed above.

■ One of the principal goals of the ICC regulation imposing responsibility on the carrier was to provide the public with financially responsible carriers. *Indiana Refrigerator Lines, Inc. v. Dalton*, 516 F.2d 795 (4th Cir. 1975). In acknowledgment of that purpose, *Proctor* reasoned that plaintiff, although an employee of the negligent driver and a passenger in the truck driven by him, was as entitled to the protection intended by the Commission's regulations as any other member of the traveling public. We feel that plaintiff here, representing the estate of deceased, is entitled to the same protection under the ICC regulations, and to deny him the right to seek recovery from the carrier would undercut one of the primary purposes of the regulatory pattern.

Zero, then, as an ICC carrier-lessee, is responsible as a matter of law for the negligence of lessor R & M's employees in the performance of the lease agreement. The trial court erred in granting summary judgment based either upon the employment status of Smith and Browning and the exclusivity provision of the Workmen's Compensation Act, or upon a conclusion that Zero had no responsibility for the negligence of Browning. Appellants are entitled to try to prove Browning's negligence, and a finding of negligence on his part, absent a finding of contributory negligence on the part of Smith, would require a finding of liability against Zero.

*Common Law Liability of Browning*

The trial court was correct in granting summary judgment in favor of Browning. Under our Workmen's Compensation Act, an employee of an employer who has complied with the requirements of the Act is not subject to liability under the common law for the injury or death of a coemployee. This rule is found in two sections of the Workmen's Compensation Act. Section 52-1-8, N.M.S.A.1978, states, in pertinent part:

> Any employer who has complied with the provisions of the Workmen's Compensation Act relating to insurance, *or any of the employees of the employer . . . shall not be subject to any other liability whatsoever* for the death of or personal injury to any employee, *except as provided in the Workmen's Compensation Act,* and all causes of action, actions at law, suits in equity and proceedings whatever, *and all statutory and common-law rights and remedies for and on account of such death* of, or personal injury to, any such employee and accruing to any and all persons whomsoever, *are hereby abolished* except as provided in the Workmen's Compensation Act. (Emphasis added.)

Section 52-1-6 D, N.M.S.A.1978, quoted in part, again excludes a co-employee in third-party suits:

> Nothing in the Workmen's Compensation Act, however, shall affect, or be construed to affect, in any way, the existence of, or the mode of trial of, any claim or cause of action which the workman had against any person *other than his employer, or another employee of his employer, . . .* (Emphasis added.)

The record discloses that R & M has paid workmen's compensation benefits to the estate of Smith, thus evidencing that R & M was in compliance with the insurance provisions of the Workmen's Compensation Act. The statute is clear that, under these circumstances, although Browning's negligence may have proximately caused the death of Smith, appellant is precluded from bringing a common-law action against him because of R & M's compliance with the Act, and Browning's status as an R & M employee.

The case is remanded to the district court for reinstatement of the complaint against Zero Refrigerated Lines, Inc.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., dissenting.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

I agree that both Smith and Browning were employees of R & M, as such a relationship is determined by New Mexico law. However, it is my opinion that this is one of those situations where state law must yield to federal law.

I agree with the Missouri Court of Appeals in *Transport Indem. Co. v. Teter,* 575 S.W.2d 780 (1978):

> "The cognate provision of § 304 [U.S. C.A.] of the Interstate Commerce Act— that the common carrier under ICC certificate shall have full control and responsibility for the operation of a leased motor vehicle—corrects the historical abuse whereby the carrier engaged an owner of equipment as an independent contractor to transport cargo and thus enabled the carrier to evade, among other responsibil-

ities, liability to the public for injury from the negligence of the contractor. *Duke v. Thomas,* 343 S.W.2d 656, 658 (Mo.App.1961). The intention of § 304, found by our Supreme Court in *Brannaker v. Transamerican Freight Lines, Inc.,* 428 S.W.2d 524 (Mo.1968), l. c. 529, was to put the use and operation of leased vehicles on a parity with equipment owned by the authorized carrier and operated by its own employees.

In terms of the requirement of § 315 [U.S.C.A.] that a motor carrier secure the public against injury from the negligent operation of motor vehicles used under ICC license, § 304 denies a carrier the defense of independent contractor [*Duke v. Thomas,* supra, l. c. 659], renders the driver a statutory employee of the carrier [*Rannaker v. Transamerican Freight Lines, Inc.,* supra, l. c. 535] and, on principles of vicarious liability, the carrier liable as a matter of law for the negligence of the driver of a vehicle—owned or non-owned—operated under the certificate of the carrier."

I think that Smith and Browning were statutory employees of Zero. Assume that some member of the traveling public had been injured or killed in the same accident the negligence of Browning would be imputed to Zero.