**EMPIRE FIRE AND MARINE INSURANCE COMPANY, as Subrogee of Estel Ray Piper, Appellant (Plaintiff),**

v.

**The MIDWESTERN INDEMNITY COMPANY, Appellee (Defendant).**

**No. 1–1179A322.**

Court of Appeals of Indiana,
First District.

April 1, 1980.

Rehearing Denied May 9, 1980.

John T. Lorenz, Kightlinger, Young, Gray & De Trude, Indianapolis, for appellant.

John T. Hume III, Smith & Jones, Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

Empire Fire and Marine Insurance Co. (Empire), as subrogee of Estel Ray Piper (Piper), brought an action against the Midwestern Indemnity Co. (Midwestern) to recover amounts Empire paid in settlement of a personal injury and property damage action against Piper. The trial judge granted Midwestern's motion for summary judgment and Empire has appealed, alleging a question of fact existed concerning on whose business Piper was engaged when the accident occurred. Additionally, Empire contends that this court should hold as a matter of law, that the vehicle was being operated on the business of the lessee-motor carrier and direct an entry of judgment for Empire. We affirm.

The facts pertinent to the cause and the corresponding issue can be stated fairly briefly. Empire insured Piper for the "non-business use" of the vehicle involved in the accident, while Midwestern was the liability carrier for Specialized Carriers, Inc. (Specialized), which had leased Piper and his vehicle for a haul of coil steel from Gary, Indiana, to Anderson, Indiana. Following the delivery of the steel, Piper stopped at a tavern which featured female dancers and consumed two beers. Piper was on the return trip north when he ran a stop sign and was involved in the accident. After Midwestern declined to assist, Empire assumed his defense and settled the claim. The lease between Specialized and Piper was a trip-lease, and provided that the lease would terminate upon delivery of the steel in Anderson, Indiana. If Piper was involved in the business of Specialized, Mid-

western would be liable, while if Piper was engaged in a non-business use of the vehicle, Empire would be the carrier responsible for the damages. The sole issue, therefore, is on whose business Piper was acting while returning from the trip-lease.

 Empire is correct in their assertion that resolution of such an issue can generally not be accomplished by way of summary judgment. As a general rule, the question of whether a servant was acting within the scope of his employment is a question of fact for the jury. *Watson v. Tempco Transportation, Inc.*, (1972) 151 Ind.App. 644, 281 N.E.2d 131. This principle, however, is not without exception. One charged with vicarious liability may be entitled to summary judgment where the facts are undisputed and there is no evidence in support of the conclusion that a master-servant relationship existed. *State v. Halladay*, (1978) Ind.App., 374 N.E.2d 51.

In the present case, Midwestern made a request for admission to the effect that Piper was on his way home when the accident occurred. Empire admitted this fact, although in a deposition, Piper stated he was not sure whether he was going back to Specialized's terminal in Gary, Indiana, or whether he was headed home. Based on the facts presented in this case, it was permissible for the trial judge, in light of Empire's admission, to make a determination as a matter of law that no genuine issue of material fact existed and grant Midwestern's motion for summary judgment.

Empire has relied heavily on *Duke v. Thomas*, (Mo.App.1961), 343 S.W.2d 656; *Roby v. Ziffrin Truck Lines, Inc.* (1958) 128 Ind.App. 578, 148 N.E.2d 215; *Watson v. Tempco Transportation Co., supra*. Following a thorough reading of these cases, we find they are all clearly distinguishable. In *Duke v. Thomas, supra*, the lessee carrier was trying to limit its liability by applying a trip-lease concept. The court refused to accept the carrier's argument that since they did not exercise control, they were not vicariously liable. In that case, however, there was an underlying 30 day lease agreement whereby the lessee was given exclu-

sive control for the entire period. There was no such underlying lease in the present case. The lease between Piper and Specialized was a one way trip-lease which terminated upon delivery of the steel in Anderson, Indiana.

In both *Roby* and *Watson*, the lessor was acting pursuant to directions of the lessee motor carrier when the accident occurred. There was no such situation in the present case, and since we have previously determined that there was no question of fact for the jury as to where Piper was headed, these two cases are likewise distinguishable.

We opine that *Pace v. Couture*, (1971) 150 Ind.App. 220, 276 N.E.2d 213 is more closely analogous to the present situation. In that case, Couture and his vehicle were under an exclusive control lease to Southern Express. Upon being told that he did not have another load to haul from Southern's terminal in Cicero, Illinois, and that he could head home, Couture headed back to his home in South Bend, Indiana. On his way home, he was involved in an accident. In affirming a grant of summary judgment to Southern, the court of appeals, by incorporating the trial court's reasoning for granting the summary judgment, reiterated the general agency rules that "the lessor must have been on the lessee's business at the time the accident occurred in order for the lessee to be liable on the basis of respondeat superior," and that "a person driving to or from work is not within the scope of his agency or employment while he is traveling to and from his employment." *Pace v. Couture*, (1971) 150 Ind.App. at 224, 225, 276 N.E.2d at 216 (citations omitted). We feel the agency concept is the proper standard to apply in this situation, and is the approach most compatible with the Public Service Commission's (PSC) rules and regulations governing motor carriers and the leasing of vehicles to augment a carrier's fleet.

The analysis of the case at bar becomes more complicated when confronted with the rules and regulations of the PSC dealing with the lease and interchange of equipment. Ind.Admin.Rules & Regs. (8–2–7–6) (Burns Code Ed.). Generally, the PSC re-

quires that any lease be for a minimum of 30 days, except when the equipment is operated pursuant to a trip-lease agreement. The trip-lease agreement, in turn, is limited to three specific situations, none of which is applicable to the present situation. Rule (8–2–7–6)–2(c). The regulation on trip-leasing concludes by stating:

> The *lessee motor carrier* shall, for the term of the trip lease, be deemed the operator thereof and *shall be responsible* for the operation of the vehicle, including equipment, physical condition, insurance coverage, registration thereof, markings, driver's qualifications and all other related matter *to the same degree and extent as if said lessee motor carrier were the regular owner thereof.* [Emphasis added.]

Empire contends that the trip-lease was illegal, in that it did not comply with the PSC's rules and regulations, as set forth in Rule (8–2–7–6)–2 and that the state's public policy is offended by a violation of these rules. Consequently, Empire argues that since Specialized violated this public policy, the return trip should be deemed as a matter of law to be on the business of the motor carrier. Although this is a persuasive argument, we make no determination as to its correctness, because of the facts presented in this case.

We consider the emphasized language in the regulation quoted above to be determinative of the present case. PSC has provided that the lessee carrier shall be responsible to the *same degree* as if it were the regular owner. Therefore, if Specialized could not have been held liable for Piper's actions if Piper was an employee of Specialized, they will not be liable when there is a trip-lease agreement.

In this case, Piper was engaged in conduct that would not have resulted in Specialized being held responsible under the doctrine of respondeat superior. Therefore, there can be no liability in this situation. Empire admitted that Piper was on his way home when the accident occurred. Had Piper been en route to Specialized's terminal in Gary, Indiana, our decision would

have been more difficult, in that we would have had to make a determination regarding Empire's argument that the trip-lease was void and that the return trip should be held as a matter of law to be on the carrier's business. We do not have to make a determination of the legality of the trip-lease in this situation, however, because of our conclusion that Piper was engaged in the non-business use of his vehicle when the accident occurred. This fact eliminated any possible liability that Specialized could have incurred, which in turn meant that Midwestern could not have been forced to accept the insurance responsibility.

The trial judge was correct in granting Midwestern's motion for summary judgment, as the only possible question of fact was admitted by Empire when they stated that Piper was on his way home when the accident occurred.

Judgment affirmed.

NEAL and RATLIFF, JJ., concur.