## AMERICAN FIDELITY & CASUALTY CO. et al. v. PENNSYLVANIA CASUALTY CO. et al.

Court of Appeals of Kentucky.
March 27, 1953.

Rehearing Denied June 12, 1953.

6

Stoll, Keenon & Park, Lexington, Dorsey & Dorsey, Henderson, for appellants.

Ortmeyer, Bamberger, Ortmeyer & Foreman, Evansville, Ind., Wilson & Wilson, Owensboro, for appellees.

DUNCAN, Justice.

This is a declaratory judgment action in which a declaration is sought determining liability under an unusual factual situation as between Dixie Greyhound Lines and its insurance carrier, American Fidelity & Casualty Company, and Cecil E. Williams and his insurance carrier, Pennsylvania Casualty Company. The lower court found in favor of Williams and Pennsylvania Casualty Company, and Dixie Greyhound Lines and American Fidelity & Casualty Company have appealed.

Prior to December 12, 1943, Dixie Greyhound Lines was operating as an inter and intrastate common carrier of passengers between Evansville, Indiana, and Memphis, Tennessee, via Henderson, Kentucky, and Camp Breckinridge, Kentucky. During 1943, a number of soldiers were stationed at Camp Breckinridge and the traffic between the camp and Evansville was unusually heavy. For the purpose of taking care of the overflow of passengers, Dixie entered into an agreement with Cecil E. Williams by the terms of which Williams leased to it certain busses individually owned by him. Under the agreement, Dixie was to pay Williams twenty cents per bus mile for the use of the vehicles and Williams was to furnish and pay the drivers and provide maintenance and repairs for the leased equipment. The busses were operated over Dixie's certificated routes and under authority of its inter and intrastate permits.

On December 12, 1943, two of the Williams-owned busses, then being operated under the lease agreement, collided in Henderson County, Kentucky. As a result of the collision, one passenger, Semian, was killed, and another, Bidwell, was injured.

Minor injuries were suffered by several other passengers.

At the time of the collision, there was in effect a policy of insurance issued to Dixie Greyhound Lines by American Fidelity & Casualty Company under the terms of which the insurer agreed to pay any judgment rendered against Dixie up to $10,000 for injury to any one person or $100,000 for injuries sustained as a result of one accident. There was also in effect on the date of the accident a policy issued to Williams by Pennsylvania Casualty Company under which it agreed to pay in behalf of its insured up to $5,000 for injury to one person and not more than $50,000 for injuries resulting from one accident. Although admitting that its policy was in effect, Pennsylvania Casualty contends that neither of the busses involved in the collision was covered by its policy. American Fidelity, although admitting its coverage of the vehicles involved, contends that the vehicles are also covered by the Pennsylvania policy and that Pennsylvania Casualty is either primarily or proportionately liable for damages sustained as a result of the collision.

The issues presented require a determination of the following questions: (1) Is Williams as lessor or bailor liable for injuries to passengers transported on the busses which were operated under the lease agreement? (2) Aside from the question of the liability of Williams, is Pennsylvania Casualty Company under the omnibus clause in its policy liable for such injuries as an insurer of Dixie Greyhound Lines? (3) Were either of the busses involved in the collision covered by the policy issued by Pennsylvania Casualty Company?

■ In considering the first question, we have no trouble in concluding that liability for injury to passengers transported in the leased vehicles rested on Dixie rather than Williams. It is generally established that a bailor who does not retain control of the article bailed is not responsible to a third person for its negligent use by the bailee. The rule applies to a motor vehicle leased for hire. Packard-Louisville Motor Co. v. O'Neal, 248 Ky. 438, 58 S.W.

2d 630; Fisher v. Fletcher, 191 Ind. 529, 133 N.E. 834, 22 A.L.R. 1392; City of Rockford v. Nolan, 316 Ill. 60, 146 N.E. 564. Although the bus drivers were employed generally by Williams, they were under the control and direction of Dixie. We do not think the mere fact that the drivers were employed and paid by Williams is sufficient to remove this case from the application of the general rule.

■ A second and more impelling reason which fixes liability on Dixie is that the obligations which it assumed under the contract of carriage with its passengers were nondelegable. Williams, therefore, could not have been an independent contractor in the transportation of Dixie's passengers. American Fidelity & Casualty Co. v. Pennsylvania Casualty Co., D.C., 97 F.Supp. 965, affirmed 6 Cir., 188 F.2d 364.

The conclusion that Williams was not liable for the injuries does not necessarily release his insurance carrier. The Pennsylvania Casualty policy by its omnibus clause provides:

"The unqualified word 'insured' wherever used in coverages A and B in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured."

■ Unquestionably, Dixie was operating the busses with the permission of Williams, and if the busses or either of them were covered by the policy, Dixie became an additional insured under the Pennsylvania policy. We are, therefore, required to determine whether either of the busses involved in the collision was covered by that policy.

It is admitted that the only one of the busses involved in the accident which had ever been specifically designated as insured by the policy was a 1940 Ford, Motor Number 5207261. By an endorsement dated and effective November 26, 1943, a 1936 Ford was substituted for the bus previously cov-

ered. From that date until April 27, 1944, when a second endorsement placed it back in the policy, there was no specific coverage of the 1940 Ford. It was during this interim that the latter vehicle was involved in the collision.

The appellants insist that notwithstanding the fact that the 1940 Ford was written out of the policy by the November 26 endorsement, it, nevertheless, remained within the general policy coverage for two reasons: (1) by a general provision in the policy covering substituted vehicles; and (2) because of an endorsement filed with the Interstate Commerce Commission after the accident but providing retroactively that its effective date should be October 18, 1943.

The substituted vehicle provision, which is Section 11 of the policy, is as follows:

"While an automobile owned in full or in part by the named insured is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such insurance as is afforded by this policy with respect to such automobile, applies with respect to another automobile not so owned while temporarily used as the substitute for such automobile."

As we construe the provision, it refers exclusively to vehicles not owned by the insured which are temporarily substituted for a vehicle or vehicles specifically insured which are withdrawn from use for repairs or because of breakdown or destruction. It does not refer to the substitution of a vehicle owned by the insured and substituted by means of an endorsement.

Finally, we consider the effect of the endorsement filed with the Interstate Commerce Commission. Williams filed an application for a certificate of convenience and necessity with the Interstate Commerce Commission on August 13, 1943, but no certificate was issued until April 12, 1944. Subsequently, an endorsement to the policy was filed with the Commission as required by the Federal Motor Carrier Act, 49 U.S. C.A. §§ 303–327. There is some controversy between the parties as to the date on which the endorsement was filed and whether or not it had a retroactive effect. The date of filing is immaterial since it is admitted that it was not filed until after the date of the accident. Neither is it necessary to determine whether or not the endorsement could be considered retroactively as being in effect on the date of the accident. In view of the conclusions which we have reached, we may assume without deciding that the endorsement was effective on December 12, 1943. We may likewise assume that the endorsement had the effect of covering all equipment actually used by the policyholder whether or not such equipment was specifically designated in the policy.

In interpreting the endorsement, we must do so in the light of the provisions of the Federal Motor Carrier Act. 49 U.S.C.A. § 315, provides that:

"No * * * permit shall be issued to a motor carrier * * * unless such carrier complies with such reasonable rules and regulations * * governing the filing and approval of surety bonds, policies of insurance * * * conditioned to pay * * * any final judgment recovered against such motor carrier * * * resulting from the negligent operation * * or use of motor vehicles under such certificate or permit".

It is thus provided that the insurance required shall cover the motor carrier which obtains the permit and such insurance shall require the insurer to pay any judgment recovered against the motor carrier resulting from negligent operation of motor vehicles under such certificate or permit. The word "insured" as used in the endorsement must, therefore, be interpreted to mean the motor carrier operating the vehicle under the permit with respect to which the insurance was provided. Notwithstanding the meaning given to the word "insured" under the extended coverage or omnibus clause, the word "insured" as used in the interstate endorsement, when construed in the light of the Federal Motor Carrier Act, is necessarily restricted to the motor carrier who obtains the permit or certificate. This view is fully supported by American Fidelity & Casualty Co. v. Pennsylvania Casualty Co.,

D.C., 97 F.Supp. 965, affirmed 6 Cir., 188 F.2d 364.

It is admitted that at the time of the collision Williams did not have a certificate or permit and the busses were operated under the sole authority of Dixie's certificates. For this reason, we do not think the interstate endorsement covered the operation of the busses at the time and place of the collision.

The judgment is affirmed.