The HOME INDEMNITY COMPANY, Reserve Insurance Company, and L & B Express, Inc., Appellants,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Lloyd F. Adams, Roy Alfred Davis, Regina Davis, Stephen Harris, Individually and as Administrator of the Estate of Lydia Harris, Deceased, Appellees.

Court of Appeals of Kentucky.

March 9, 1979.

Discretionary Review Denied Sept. 11, 1979.

William Mellor, Louisville, for Home Indem. Co.

William Mellor, Louisville, Henry A. Triplett, Hogan, Taylor, Denzer & Bennett, Louisville, for Reserve Ins. Co.

William Mellor, Louisville, William S. Cooper, Elizabethtown, for L & B Express, Inc.

Robert Spragens, Jr., Lebanon, for St. Paul Fire & Marine Ins. Co.

Raymond Overstreet, Liberty, for Lloyd F. Adams.

Morris R. Butler, Greensburg, William A. Miller, Louisville, for Roy Alfred Davis and Regina Davis.

Robert L. Dowell, Greensburg, for Stephen Harris, Individually and as Administrator of the Estate of Lydia Harris, Deceased.

Before GANT, COOPER and WILHOIT, JJ.

GANT, Judge.

This declaratory judgment action was brought to determine the extent of liability, if any, of Home Indemnity Company (Home), Reserve Insurance Company (Reserve), and St. Paul Fire & Marine Insurance Company (St. Paul) with respect to an automobile accident involving a tractor-trailer owned and operated by Lloyd F. Adams and leased to L & B Express, Inc., a common carrier operating under Interstate Commerce Commission (ICC) regulations.

At the time of the accident, Adams was under dispatch from L & B to transport a load in Ohio on the day after the accident. On the day the accident occurred, Adams was driving his leased tractor to Indiana for the purpose of picking up a trailer he had purchased. The previous day Adams's employee had delivered L & B's trailer to its Madisonville terminal. The accident occurred in Kentucky, a state in which L & B was licensed to operate, before Adams reached Indiana, where L & B was not authorized by the ICC to operate. The trial court found, and there is sufficient evidence to support the conclusion, that L & B had knowledge of the purchase of the new trailer, and that L & B had given its implied consent for the use of the new trailer in its business.

The accident occurred on May 27, 1973. Roy Davis, Regina Davis and Stephen Harris were injured, and Lydia Harris was killed. Two tort actions were brought by these parties solely against Adams. More than one year later L & B was added as a party defendant to the action brought by Stephen Harris and the Estate of Lydia Harris. Home negotiated a settlement on behalf of L & B in that action and an order was entered dismissing all claims against L & B with prejudice. The other claims were consolidated for appeal and are decided as a companion case herewith.

This action was instituted to determine coverage between the three insurance policies. Home and Reserve have agreed by order entered January 28, 1978, that both their policies afford coverage to L & B for any liability which may be adjudged against L & B as a result of this accident. St. Paul in its brief concedes the correctness of the judgment of the trial court which determined that St. Paul's policy covered Adams in these circumstances with the coverage by the terms of the policy to be on a pro rata basis with any other insurance. This leaves only the following issues to be decided here.

1. Is Adams an "insured" under the Home/Reserve policies? In order to answer this question, we must consider the lease between Adams and L & B, the insurance policies and the applicable ICC regulations. The Home/Reserve policies are identical with respect to the terms of coverage, the only difference being the amount of coverage. The pertinent parts of the documents in question are as follows:

## ICC REGULATIONS

I. 49 CFR § 1043.1 [N]o common or contractual carrier . . . shall engage in interstate commerce . . . until there shall have been filed with and accepted by the [Interstate Commerce] Commission a . . . Certificate of Insurance . . . conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to

or the death of any person resulting from the negligent operation, maintenance or use of such motor vehicle . . . .

II. 49 CFR § 1057.4, setting forth the requirements for using leased vehicles, provides: (a) Contract requirements. The contract, lease or other arrangement for the use of such equipment . . . (4) shall provide for the exclusive possession, control and use of the equipment; and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of the contract, lease or other arrangement. . . .

The lease between Adams and L & B states at Paragraphs 7 and 20:

### LEASE BETWEEN ADAMS AND L & B

7. During the existence of this agreement, the Carrier assumes liability for bodily injuries to or death of any person (except the Contractor, or the employees, agents or servants of the Contractor) or the loss or damage to the property of others (except the Contractor, or the employees, agents or servants of the Contractor) resulting from the negligent operation, maintenance or use of the vehicles described in Appendix A . . . The Carrier shall maintain insurance for the aforesaid liability for injuries, losses or damages as required by the ICC and state regulatory authorities. . . .

20. It is to be clearly understood and agreed and it is the intention of the parties of this agreement that the Contractor is and shall remain an independent contractor only and is not the agent, employee or representative of Carrier for any purpose whatever. Nothing herein contained shall be construed as inconsistent with that status. Neither the contractor nor the employees, agents or servants of the Contractor, are to be considered the employees or servants of the Carrier at any time, or under any circumstances.

### INSURANCE POLICIES OF HOME AND RESERVE

### II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

. . . . .

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, providing his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, . . .

None of the following is an insured:

. . . . .

(ii) the owner or lessee (of whom the named insured is a sub-lessee) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of such owner or lessee;

. . . . .

### TRUCKMEN—FORM B

It is agreed that the insurance applies with respect to any owned or hired automobile or the owner of a non-owned automobile of the commercial type, subject to the following additional provisions:

. . . . .

(d) The insurance does not cover as an insured the owner or any lessee (of whom the named insured is a sub-lessee) of a hired automobile . . . if the bodily injury or property damage occurs:

(1) while the automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority; but this limitation shall not apply to an automobile while en route, at the request of the named insured, to engage in such exclusive use and not transporting property for others;

. . . . .

and sub-paragraph (ii) of the "Persons Insured" provision is amended accordingly.

Let us examine the language of these more closely to determine whether Adams is covered under them. First, under the insurance policies Adams is obviously spe-

cifically excluded as an insured by subparagraph (ii) of II, Persons Insured. This section is modified and specifically amended by the Truckmen—Form B endorsement, however, which does provide coverage for ". . . any person . . . engaged in transporting property by automobile for the name insured . . ." so long as it is in the exclusive business of L & B. Further, Section (d) of the endorsement denies coverage to an owner/operator only if he is not using the vehicle in question exclusively in the business of L & B, thus modifying the "Persons Insured" section.

Appellants contend that Adams is excluded under the policies because he was neither using the vehicle in the exclusive business of L & B nor could he be classified as an employee of L & B under the policies. The testimony reveals that the purpose of the policies here in question was to comply with ICC regulations. It is our opinion that the policies must be construed simultaneously with those regulations and with the lease agreement, not as isolated documents.

The first case cited by appellants, *American Fidelity & Casualty Co. et al. v. Pennsylvania Casualty Co. et al.*, Ky., 258 S.W.2d 5 (1953), dealt with coverage as between two policies covering two ICC licensed carriers, one of which had leased passenger buses to the other. The court held only that as to endorsements contained in both policies purchased to enable the respective insureds to obtain ICC certificates, the word "insured" ". . . is necessarily restricted to the motor carrier who obtains the permit or certificate [as opposed to one operating under an entirely different permit or endorsement]." *Id.,* page 8. This has no bearing on our factual situation.

The two cases most clearly in point, *Wellman v. Liberty Mutual Insurance Co.*, 496 F.2d 131 (8th Cir. 1974), and *Cosmopolitan Mutual Insurance Co. v. White*, 336 F.Supp. 92 (D.Del.1972), are not totally contradictory when one examines the facts of each. In *Cosmopolitan,* an accident occurred involving a vehicle operating under the standard ICC lease, where the driver (deceased, an employee of the owner) had delivered the carrier's load and was en route to pick up a load of a third party. Considering the factors·of (1) failure of the carrier to remove his ICC placard or obtain a receipt from the driver and (2) evidence of the carrier's acquiescence in the driver's practice of obtaining loads for third parties, the court found that the driver was on the "exclusive business" of the carrier under a policy almost identical to the Home/Reserve policies.

The *Wellman* court was faced with the same question, but vastly different facts. There the plaintiff had obtained a default judgment against the owner/operator of the vehicle and the third party for whom he was hauling a load. The lessee of the truck was dismissed as a party on motion of the plaintiffs after the action was instituted. The court noted that the third party for whom the owner/operator was hauling was not an ICC approved carrier nor did the owner/operator have the lessee's permission to make this delivery. A footnote indicates that the police report of the accident shows the accident was entirely the fault of the injured party, with no negligence on the part of the owner/operator, although this issue was never litigated and the default judgment was entered. An action was then instituted by the default plaintiffs in an attempt to recover their judgment from the lessee's insurer under a policy substantially identical to that in *Cosmopolitan* and the Home/Reserve policies. The court found that the owner/operator was not an insured. There, however, the owner/operator was obviously not on the exclusive business of the lessee and the court refused to find that the owner/operator was an employee of the lessee while he was engaged in the business of a third party. It appears that the court in *Wellman* was merely reluctant to impose liability upon a carrier or his insurer where the driver was hauling a load for a third party without the carrier's permission and was involved in an accident in which he was not at fault.

■ The weight of authority is that ICC carriers may generally not avoid liability by "attempting to differentiate between uses of leased vehicles which are in the business

of the carrier and those which are not. . . ." *Mellon National Bank & Trust Co. v. Sophie Lines, Inc.,* 289 F.2d 473 (3rd Cir. 1961); *American Transit Lines v. Smith,* 246 F.2d 86 (6th Cir. 1957); *Cosmopolitan, supra.* In the present case, appellants maintain that because Adams was purchasing the trailer for himself he was not on the exclusive business of L & B; that he was on business for his own profit. As the opinion of the trial court pointed out, Adams's business and that of L & B coincide when Adams is driving the truck under the lease—both Adams and L & B profit from the arrangement. If an owner/operator was excluded under a policy such as this merely because he also made a profit from the lease arrangement, the policy would only cover vehicles owned by the company. L & B owned no tractors itself, so this is clearly not the proper construction of this contract. Here the evidence indicates that L & B acquiesced in Adams's purchase of the trailer. L & B did not require that Adams remove the ICC sticker or permit from the tractor during the trip, nor was he carrying a load or attempting to carry a load for a third party. (Adams testified that he had never hauled a load for any other parties while he was under lease to L & B, nor could he do so without L & B's permission.) As the trailer was to be used in L & B's business, it was in L & B's interest as well as that of Adams that he acquire it. The cases cited above clearly indicate that Adams is covered by both Home and Reserve policies under these circumstances. Furthermore, at least one case has held that the only way a carrier can release itself from liability for the negligent operation of leased vehicles is to comply with the ICC regulation—removal of the ICC stickers and obtaining a receipt from the owner of the vehicle. ICC Rule, § 207.4. Otherwise, ". . . as a matter of law [lessee] is to be considered as the owner of the tractor and in full control if it . . . ." *Bankers & Shippers Ins. Co. of N.Y. v. Watson,* 216 Va. 807, 224 S.E.2d 312 (1976), citing *Mellon, supra* and *Cosmopolitan, supra.*

Moreover, it is the opinion of this Court that Adams is also covered as an "employee" under the Home/Reserve policies, contrary to the holding of the court in *Wellman.* In *Cox v. Bond Transportation, Inc.,* 53 N.J. 186, 249 A.2d 579 (1969), another accident case involving an ICC carrier, the question was again whether the owner/operator was on the business of the lessee. The court noted:

> The fact that he was driving as an independent contractor . . . of itself has no important significance. The statute 49 U.S.C. § 304(e) and the regulations based thereon, when applicable, eliminate the common law distinction between an independent contractor and an employee. They create a type of statutory employment under which the franchised carrier becomes responsible for the negligence of the owner/operator, at least when he is engaged in the activities of the carrier. (In view of the public policy expressed by the regulations, it can be persuasively argued that when owner-operated equipment is leased by a carrier, the exclusive possession, control and use thereof, and 'complete' assumption of responsibility imposed on the carrier for the 'duration' of the lease, subjects it to liability for the lessor's negligent operation so long as the lessor is on the public highway with the permission of the carrier. (*Cf. Mellon, supra*). *Id.,* page 589.

Thus it is apparent that so long as Adams was engaged in the business of L & B, as we have determined he was, he is also an employee of L & B for liability purposes, despite language in the insurance policies and the lease to the contrary. *Weeks v. Kelley,* Me.1977, 377 A.2d 444; *Cosmopolitan, supra; Mellon, supra.* As the trial judge observed, both the lease and the insurance policies were written to comply with ICC regulations and as such must be construed in light of those regulations. This further explains the apparent conflict of the *Wellman* case, *supra,* i. e., a finding that the vehicle is being used in the business of the lessee is necessary before the driver/operator can be categorized as an employee. As aptly stated in *Simmons v. King,* 478 F.2d 857 (5th Cir. 1973):

The deliberate fulfillment of these statutory [requirements] [execution of lease, display of ICC placards] by the parties must be viewed as giving rise to a statutory relationship, since these regulations have the force and effect of law, *Cox v. Bond, supra* [249 A.2d at 586]. Since under the lease [lessee] assumed exclusive possession, control and use of the vehicle and responsibility to the public, then [owner/operator] became his statutory employee . . .. *Id.*, page 867.

The overwhelming weight of authority confirms that under the facts here presented Adams was a statutory employee of L & B and under the application thereof was operating the vehicle in the exclusive business of L & B. He therefore was a statutory employee of L & B under the insurance policies when these policies are further construed in light of those statutory provisions. We find that Adams is covered as an insured under the Home/Reserve policies with regard to any liability arising from this accident.

The second question presented is whether any claims of the Davises against L & B are barred by the one-year statute of limitations for actions based in tort or if claims may be maintained as an action based on contract with the governing 15-year statute of limitations. Appellants point to the language in *Cosmopolitan, supra,* that would seem to be conclusive on this point. There the court indicated that, since the lessee was not made a party to the original suit against the owner/operator, he could not be joined in that action after the one-year statute of limitations had run, nor could he be held liable for any judgment arising from the accident. Nowhere in its analysis of that lessee's liability, however, did the court mention any provision of the lease between the parties of a nature similar to Paragraph 7 in the Adams and L & B lease, which in effect creates contractual rights in injured third parties. The court in *Cosmopolitan* does discuss third party contract rights with regard to the insurance carrier as follows:

Since the ICC regulations were enacted for the benefit of the public, *Cox, supra,* and *Mellon, supra,* the ICC insurance requirements referred to above create a right in the plaintiffs in the state court action as third party beneficiaries of the . . . insurance contract. *Id.,* page 101.

■ Considering the lease provision, L & B's position is more nearly that of the insurance company than the lessee in *Cosmopolitan.* This position is further supported by *Weeks, supra*: "In the absence of any indemnification agreement providing otherwise, the lessee remains contractually (as well as statutorily) responsible for injuries sustained by the travelling public as a result of the negligent operation of the equipment . . . [L]essor, may enforce that contractual obligation." *Id.,* page 447. If there is a contractual obligation, there is no need to cite authority for the well-settled rule that third party beneficiaries may enforce their rights thereunder. Any action brought by the Davises based on their standing as third party beneficiaries of this contract will be governed by the 15-year statute of limitations for contracts.

■ The final question before us, the allocation of liability among the three policies, Home, Reserve and St. Paul, may be decided from the language of the policies themselves. The "Truckmen—Form B" endorsement states that it modifies the coverage provided in the policy relating to comprehensive automobile liability insurance and automobile medical payments insurance. The provision: "Excess insurance— Hired and non-owned automobiles. With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured" is prior to the Form B endorsement which contains the following:

(f) With respect to any automobile while leased or loaned to any person or organization other than the named insured, engaged in the business of transporting property by automobile for others, the insurance under this endorse-

ment shall be excess insurance over any other valid and collectible insurance available to the insured. Otherwise, the insurance under this endorsement is primary insurance.

This plainly means that any automobile that is leased to any person or organization other than L & B is covered by the policy only in excess of other available coverage. As to any auto leased to L & B, it is primary coverage. The language admits of no other interpretation.

Therefore, the trial judge was correct in his determination of the liabilities of the three companies as follows:

There is $1,100,000 total coverage afforded by the three policies, St. Paul having $100,000, or $\frac{1}{11}$ thereof. Its pro rata share (admitted by it) is therefore $\frac{1}{11}$ of any judgment. Home and Reserve are responsible for the other $\frac{10}{11}$, with Home first paying its $100,000 policy limits and Reserve paying the excess, since it is by its terms a following policy.

The judgment of the trial court is therefore affirmed.

All concur.