Roy Alfred DAVIS, et al., Movants,

v.

HOME INDEMNITY COMPANY, et al., Respondents.

and

GEORGE PARR TRUCKING SERVICE, INC. (Formerly L&B Express, Inc.), Movant,

v.

HOME INDEMNITY COMPANY, et al., Respondents.

Supreme Court of Kentucky.

April 20, 1983.

Petition for Modification Granted in Part, Denied in Part Nov. 2, 1983.

William A. Miller, Sr., Louisville, Morris Butler, Robert Dowell, Greensburg, Redford H. Coleman, Elizabethtown, for movants.

John D. Cole, David W. Anderson, Bowling Green, Robert Spragens, Lebanon, for respondents.

LEIBSON, Justice.

On May 27, 1973, Lloyd Adams, driving a tractor-trailer owned by him and operating under the ICC permit of L & B Express Company (now George Parr Trucking Service, Inc.) crossed to the wrong side of the highway and collided head on with a vehicle

operated by Roy Davis, injuring him and two other passengers and killing Lydia Harris.

This is the third appeal in a series of cases resulting from that accident. We will refer to these three cases as the tort action, the declaratory judgment action and the collection suit.

The tort action was brought in Taylor Circuit Court by the injured parties and the Administrator of Lydia Harris' Estate. While the tort action was pending, St. Paul Fire & Marine Insurance Company (St. Paul) brought a declaratory judgment action against two other insurance carriers, Home Indemnity Company (Home) and Reserve Insurance Company (Reserve). St. Paul insured Davis, providing coverage in the amount of $100,000 for any one person and $300,000 coverage for any one accident. Home provided coverage for L & B Express Company in the single limit of $100,000. Reserve provided coverage to L & B Express Company for liability in excess of its basic coverage with Home to the extent of $900,000.

The purpose of the declaratory judgment action was to determine whether the Home/Reserve coverage to L & B Express Company applied in this case where Davis was driving and, if so, to provide a *prospective allocation* of responsibility for payment among the three insurance carriers. The tort action was held in abeyance pending determination of the declaratory judgment action.

After the trial court entered a declaratory judgment, the tort action was tried. The result was a judgment for all five occupants of the automobile against Adams, the tractor-trailer driver. Both judgments, the one in the tort action and the one in the declaratory judgment action, were then appealed. The judgment in the tort action was affirmed in *Adams v. Davis*, Ky.App., 578 S.W.2d 899 (1979). The judgment in the declaratory judgment action was affirmed in *Home Indemnity v. St. Paul Fire & Marine Ins.*, Ky.App., 585 S.W.2d 419 (1979), discretionary review denied.

When the mandates issued and the judgments were not paid, the collection suit was instituted to convert the money judgments against Adams to money judgments against the respective insurance carriers. At that point, Reserve was declared insolvent in Illinois and an Illinois liquidator was appointed. The Commissioner of Insurance of Kentucky was appointed as ancillary liquidator. The Kentucky Guaranty Insurance Association, established by statute to provide limited coverage when a carrier becomes defunct, was joined as a party.

The trial court was then faced with a collection suit, charged with the responsibility of applying *Home Indemnity v. St. Paul, supra,* as the law of the case, but on notice that the underlying factual situation had changed. The coverage provided by Reserve was no longer "valid and collectible insurance available to the insured," the terminology used in the various policies to define liability when other carriers also provided coverage. "Valid and collectible insurance" was also an underlying fact assumed by all parties to be true when the declaratory judgment action was being pursued through the courts.

In *Home Indemnity v. St. Paul, supra,* the Court of Appeals decided that the Home/Reserve policies provided coverage to Adams as a "statutory employee of L & B" and that the Home/Reserve coverage, like the St. Paul coverage, was "primary coverage." The Court of Appeals then made the following *prospective allocation* of the three carriers' responsibilities to each of the five plaintiffs. At page 425:

"There is $1,100,000 total coverage afforded by the three policies, St. Paul having $100,000, or 1/11 thereof. Its pro rata share (admitted by it) is therefore 1/11 of any judgment. Home and Reserve are responsible for the other 10/11, with Home first paying its $100,000 policy limits and Reserve paying the excess, since it is by its terms a following policy."

Home tendered into court the amount of its policy, $100,000, and interest to the date tendered. St. Paul tendered into court 1/11th of each of the respective judgments for

each of the five claimants together with interest to the date of tender. Judgment was entered against Kentucky Insurance Guaranty Association to the extent of the maximum amount allowed by statute as to each of the judgments, and paid. The result is that the judgments have been satisfied as to three of the passengers, but that $230,976.51 plus interest remains unpaid on the judgment of the driver, Roy Davis, and $125,919.43 plus interest remains unpaid on the judgment for the Estate of Lydia Harris.

The trial court, seeking to apply the judgment of the Court of Appeals in *Home Indemnity v. St. Paul, supra,* made two findings which are the subject of this appeal.

First, the trial court decided that the literal language of the Court of Appeals decision limited St. Paul's liability to any one plaintiff to "⅟₁₁th of any judgment;" that, therefore, even though St. Paul had coverage up to $100,000 per person and $300,000 per accident and this coverage has not been exhausted, it has no further liability. The claimants, Davis and the Harris Estate, appeal this ⅟₁₁th limitation. The insured, L & B (now Parr Trucking Service) also complains of this result since it is personally liable for the entire unpaid portion of each judgment.

On the other hand, the trial court also held that the effect of the Court of Appeals' language in the declaratory judgment decision, that "Home and Reserve are responsible for the other ¹⁰⁄₁₁ths," is to provide "for a joint and several liability on Home and Reserve to the extent of ¹⁰⁄₁₁ths of any recovery by these plaintiffs." Thus interpreted, Home has a liability in excess of its $100,000 policy limits to the tune of the $230,976.51 plus interest due and unpaid on the judgment of Roy Davis and $125,919.43, plus interest due and unpaid on the judgment for the Estate of Lydia Harris. Home appealed this result.

On appeal, the Court of Appeals upheld the portion of the trial court's judgment limiting the liability of St. Paul to ⅟₁₁th of each judgment, regardless of its $100,000 per person coverage, but the portion of the judgment finding Home jointly and severally liable for sums in excess of its policy limits was held erroneous. Thus the language of the former decision in the declaratory judgment action that St. Paul's exposure is ⅟₁₁th of any judgment has been given literal application but the language that both "Home and Reserve are responsible for the other ¹⁰⁄₁₁ths" has been avoided.

In trying to apply the "law of the case" doctrine to its previous decision in the declaratory judgment action, the Court of Appeals used the literal language of the holding as it applies to St. Paul but chose to interpret the words that apply to Home. It is more reasonable to refer back to the body of the opinion in both instances, since the holding only has meaning in terms of the underlying facts upon which it is based. The underlying facts are that the Court of Appeals presupposed that all three coverages—St. Paul, Home, and Reserve—were valid and collectible insurance and in those circumstances found that St. Paul on the one hand, and Home/Reserve on the other, both provided primary coverage to the extent of their policy limits. Had the Reserve coverage been nonexistent, which was the actual fact when it was time to pay the judgments, the meaning of the holding is not reasonably subject to debate: St. Paul on the one hand and Home on the other would each equally be liable to pay on the judgment obtained by any one person to the extent of the limits of their coverage, $100,000 per person and $300,000 per accident for St. Paul, and $100,000 altogether for Home. The holding in the case, which we have quoted above, was nothing more than a prospective allocation based upon the law as set out in the opinion.

When we look at the whole picture, the holding in the declaratory judgment case was not how much each carrier should pay on an existing judgment, but merely a prospective allocation among *paying* insurance carriers, assuming all to be solvent.

We find that the opinion of the Court of Appeals in this case is inconsistent within itself. If the judgment can be "interpret-

ed" with respect to Home's liability, then it should likewise be "interpreted" with respect to St. Paul's liability. In liquidation, Reserve's policy is no longer enforceable nor are there any more funds to pay any of its obligations. Consequently, Reserve now has no "coverage" to which there can be any allocation to benefit St. Paul. St. Paul's proration of 1/11th of any judgments against Adams was on the basis of an allocation of "coverage" being available from St. Paul, Home and Reserve. When Reserve no longer has coverage, St. Paul's coverage proration is accordingly increased. If it is correct to limit Home's liability to its policy limit by interpretation of the judgment—and we find that it is correct—then it is inconsistent to declare that St. Paul's liability is less than the policy limits of its coverage. The original judgment prorates St. Paul's liability with Home's liability up to the extent of the limits of liability on the respective policies. The ultimate limit of St. Paul's liability is its policy coverage.

■ We agree with movants that a proper interpretation of the decision in *Home Indemnity v. St. Paul, supra,* is that St. Paul is a primary insurer liable on each judgment to the limit of its $100,000 per person coverage, until its total coverage of $300,000 is exhausted, and the "1/11th" language was simply a prospective allocation.

Movants also claim that relief should be granted in this case pursuant to CR 60.02(e) and (f). CR 60.02(e) provides that "a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment ... (where) it is no longer equitable that the judgment should have prospective application." CR 60.02(f) provides for relief from final judgment for "any other reason of an extraordinary nature justifying relief." Subsections (e) and (f) of CR 60.02, unlike subsections (a), (b), and (c), are not subject to a limitation of one year after judgment. They are intended to apply without regard to the passage of time, assuming the underlying facts exist which justify such extraordinary relief.

CR 60.02 was intended to codify the common law writ of coram nobis. CR 60.05. In

*Gross v. Commonwealth,* Ky., 648 S.W.2d 853 (1983), we stated:

"The purpose of such a writ was to bring before the court that pronounced judgment errors in matters of fact which (1) had not been put into issue or passed on, (and) (2) were unknown and could not have been known to the party by the exercise of reasonable diligence and in time to have been otherwise presented to the court."

■ Coram nobis "is an extraordinary and residual remedy to correct or vacate a judgment upon facts or grounds, not appearing on the face of the record and not available by appeal or otherwise, which were not discovered until after rendition of judgment without fault of the parties seeking relief." *Harris v. Commonwealth,* Ky., 296 S.W.2d 700 (1956).

■ The type of error which occurred in the present case fits squarely within both (e) and (f) of CR 60.02. The literal language of the holding in the declaratory judgment action from which relief is now sought, was based on an underlying assumption of fact assumed by all parties before the court, which was essential to the holding but erroneous. That assumption was that the coverage afforded in the three policies under consideration was "valid and collectible" insurance. CR 60.02 is a proper tool to correct the holding to conform to the conclusions of law stated in the opinion. The conclusions of law were that both St. Paul and Home provided "primary" coverage and that to the extent of their policy limits both were obliged to pay any judgment rendered against their insured. The judgment must now be amended to conform to the true facts. Amending the judgment does not affect the finality of the decision in *Home Indemnity v. St. Paul, supra.* That decision was of "prospective application." Applying it according to the facts that now exist at the time payment is due requires that we remand the case to the trial court to enter an order requiring St. Paul to pay the balance of its coverage, and also to pay interest, as specified in its policy, from the date of the judgment in the

tort action, on the uncollected amount of the judgment in the tort action.

The second portion of this appeal deals with the claim of the insured, L & B (now Parr Trucking Service) that should we decide, as we have done, that Home is not required to pay beyond its policy limits, nevertheless the insured is entitled to such coverage on grounds that: (1) "Home had voluntarily assumed liability for the judgments against appellant Parr, and is now estopped to deny that assumption;" or (2) Home was guilty of "bad faith failure to settle" the claim against its insured. L & B bases this claim for relief principally on language of opinions of this court in three cases: *American Cas. Co. of Reading, Pa. v. Shely,* 314 Ky. 80, 234 S.W.2d 303 (1950); *St. Farm Mutual v. Marcum,* Ky., 420 S.W.2d 113 (1967); and *Manchester Ins. and Indemnity Co. v. Grundy,* Ky., 531 S.W.2d 493 (1975).

 This reliance is misplaced. We affirm the decision of the Court of Appeals holding erroneous the portion of the trial court's judgment ruling that Home was liable for sums in excess of its policy limits.

The claim of estoppel is made in reliance on principles set out by this Court in *American Cas. Co. of Reading, Pa. v. Shely, supra,* 314 Ky. 80, 234 S.W.2d 303 (1950). That case holds that "where an insurance company undertakes the defense of an accident case" without reservation of rights "the loss of the right by the insured to control and manage the case" is a sufficient "prejudice" to justify a decision that the insurance company is thereafter estopped to deny coverage.

The fallacy with this argument is twofold: first, Home did not deny coverage. It seeks to pay, but only to its policy limits. Secondly, the insured, L & B, had its own retained counsel throughout, who actively protected its interest, as shown by the correspondence in the record. Home did not defend to the exclusion of its insured. Incidentally, that correspondence specifies in clear and unmistakable terms that Home would pay any judgment up to the limits of its policy.

Thus, this situation is not comparable to *American Casualty Co., supra,* where the carrier defended without reservation of rights to the exclusion of consideration of the interest of the insured and thereafter attempted to deny coverage.

The "bad faith" claim for relief is equally without merit. *Marcum, supra,* and *Manchester, supra,* provide for recovery against the insurance carrier in excess of the policy limits in certain limited circumstances where "bad faith" has occurred. One of the limitations is that there has been an offer from the victim to settle within the policy limits. Thereafter it must be shown that this offer was ignored in circumstances where it was "bad faith" to do so. It is "bad faith" because there is a substantial probability of a jury verdict against the insured and a substantial probability that the verdict will significantly exceed the policy limits. In such circumstance, to ignore the offer is to ignore the interest of the insured. But the first premise is that the insurance carrier has been presented with an opportunity to settle within the policy limits. These facts do not exist in this case. On the contrary, claimants' counsel was deposed and testified unequivocally that no settlement demand was made upon Home prior to trial. Neither the *Marcum* nor *Manchester* cases suggest any affirmative duty on the insurance carrier in the circumstances of the present case to seek out the claimant and offer settlement in order to avoid a charge of bad faith. The type of bad faith charged in this case occurs when there has been bad faith failure to settle when opportunity presents itself. The trial court properly decided this issue summarily, and without further discovery on this issue. The testimony of claimants' counsel on deposition would have made further discovery on this issue irrelevant.

For the reasons stated herein, the decision of the Court of Appeals is affirmed as to Home Indemnity Co., but reversed as to St. Paul. This case is remanded to the trial court to enter judgment against St. Paul in conformity with the opinion herein.

All concur except GANT, J., who did not sit.