878 F.2d 382
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George REBICK, Plaintiff-Appellant,
v.
The HOME INDEMNITY COMPANY, Defendant-Appellee.
 No. 88-5808.
 United States Court of Appeals, Sixth Circuit.
 July 5, 1989.
 
 Before WELLFORD and ALAN E. NORRIS, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 In this diversity action, we must decide who must bear the cost of settling a Kentucky state court suit arising out of a serious accident involving a leased truck and an injured party, John Corrigan, who sued for his personal injuries the driver of the truck, George Rebick, plaintiff herein, and two trucking companies involved in the lease and use of the truck at the time of the accident. Rebick settled Corrigan's suit for approximately $442,000, through purchase of an annuity, and then brought this action against Home Indemnity Company (Home), asserting that Home was contractually obligated to repay him the settlement amount. R.L. Jeffries Trucking Company (Jeffries), Home's insured, had leased the truck in question and its driver, Rebick, from Aero Trucking Company (Aero), which was insured by Transit Casualty Company (Transit). The real question is whether Home or Aero and its insurance carrier, Transit, must pay the settlement cost when Rebick, operating the truck leased by Jeffries from Aero, struck Corrigan's automobile.
 
 
 2
 A few days after the lease between Aero and Jeffries, Rebick, who was designated the "regular employee" and "authorized agent" of Aero, drove the truck and caused a collision with the Corrigan vehicle while operating it on a Jeffries route. Jeffries, an approved ICC motor carrier for hire in interstate commerce, agreed to pay Aero for the lease of the truck and driver seventy-five percent of the gross revenue realized during the lease term, and further agreed to "assume full responsibility to the public, the shippers and to all state and federal regulatory bodies or authorities" for the use and operation of the truck. Aero, on the other hand, agreed "to hold [Jeffries] harmless from any and all losses ... resulting from the operation of such equipment under [the] lease." In addition, it was agreed that "any driver of the equipment ... will be employed by and responsible to" Aero. The trip commenced in Arkansas and was to end in Ohio; the accident occurred in Louisville, Kentucky.
 
 
 3
 In the Corrigan suit, Home defended Jeffries but declined to defend Rebick, who "borrowed" the funds necessary to settle the case from Aero ($50,000, its deductible amount under the Transit policy) and from Transit ($391,652). Aero and Transit were involved in Rebick's suit against Home by reason of their advances.[1]
 
 
 4
 Under the lease, Aero agreed to pay the wages and expenses of its agent and driver, Rebick, and to carry workmen's compensation and payroll taxes on his earnings. Jeffries was to have "exclusive possession, control and use" of the truck "when operated by" Aero. Jeffries assumed "full responsibility;" however, as heretofore indicated, was yet "not to be liable for the loss of, or damage to" the truck "however caused." Aero finally agreed to indemnify Jeffries for cargo loss or damage, covenanting that it had "public liability insurance" for the truck and to indemnify Jeffries fully from "all losses of whatsoever kind ... resulting from the operation of" the truck "under the lease."
 
 
 5
 Home's policy, issued to Jeffries, defined "Who is Insured" as follows:
 
 
 6
 2. Anyone else is an insured while using with your permission a covered auto[2] you own, hire or borrow except:
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 b. Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking autos.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 4. The owner or anyone from whom you hire or borrow a covered auto which is not a trailer is an insured while the covered auto:
 
 
 13
 a. Is being used exclusively in your business, and
 
 
 14
 b. Is being used over a route or territory you are authorized to serve by public authority or on its way to that route at your request.
 
 
 15
 (Emphasis in original).
 
 
 16
 Home's policy provided, on the other hand, that the following is not an insured:
 
 
 17
 1. Any trucker,[3] orhisorher agents or employees, other than you and your employees:
 
 
 18
 a. If the trucker is subject to motor carrier insurance requirements and meets them by a means other than auto liability insurance.
 
 
 19
 b. If the trucker is insured for hired autos under an auto liability insurance policy which does not insure on a primary basis the owners of the autos and their agents and employees while the autos are being used exclusively in the trucker's business and over a route or territory the trucker is authorized to serve by public authority.
 
 
 20
 (Emphasis in original).
 
 Finally, Home's policy provides that its
 
 21
 liability coverage is primary for any covered auto while hired or borrowed by you and used exclusively in your business and over a route or territory, if any, you are authorized to serve by public authority. This policy's liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker.
 
 
 22
 (Emphasis in original). Home defended Jeffries in Corrigan's suit.
 
 
 23
 Home contends that under its policy and the circumstances of the lease, Rebick was not an insured. The magistrate, to whom the controversy was referred for findings of fact and conclusions of law, recommended that Home's motion for summary judgment be granted, holding that "plaintiff cannot be considered an 'insured' with Home." The district court accepted fully the magistrate's findings, conclusions, and recommendation, and entered judgment for Home, having previously denied plaintiff's summary judgment motion. We affirm.
 
 
 24
 We now look to Transit's pertinent policy provisions defining who is an "insured:"
 
 
 25
 (c) any other person while using an owned automobile[4] or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission,....
 
 
 26
 Transit's policy also provided that the following are not "insured:":
 
 
 27
 (i) any person or organization, or any agent or employee thereof, other than the named insured or any employee thereof, engaged in the business of transporting property by automobile for the named insured or for others under any of the following conditions:
 
 
 28
 .............................................................
 
 
 29
 ...................
 
 
 30
 * * *
 
 
 31
 (2) if such person or organization so engaged is subject to the security requirements of any motor carrier law and satisfies any such requirements by any means other than automobile liability insurance; or
 
 
 32
 (3) if such person or organization so engaged is insured under an automobile liability insurance policy which affords coverage for automobiles hired by such person or organization but which does not insure on a direct primary basis the owners of such automobiles and the agents and employees of such owners while such automobiles are being used exclusively in the business of such person or organization and over a route such person or organization is authorized to serve by federal or public authority; or
 
 
 33
 (4) if such person or organization is an independent contractor so engaged in local pick-up or delivery operations for the named insured in a territory such person or organization is authorized to serve by federal or public authority;
 
 
 34
 .............................................................
 
 
 35
 ...................
 
 
 36
 * * *
 
 
 37
 (iii) any person while employed in or otherwise engaged in duties in connection with an automobile business[5] other than an automobile business operated by the named insured.
 
 
 38
 Transit's policy also provided that its coverage is "excess coverage"
 
 
 39
 With respect to any automobile while leased or loaned to any person or organization other than the named insured, engaged in the business of transporting property by automobile for others, ... over any other valid and collectible insurance, whether primary, excess or contingent, available to the insured. Otherwise the insurance afforded by this endorsement is primary insurance.
 
 
 40
 "Summary judgment should be entered only when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Potters Medical Center v. City Hospital Ass'n, 800 F.2d 568, 572 (6th Cir.1986) (quoting Fed.R.Civ.P. 56(c)). "The evidence must be viewed in a light most favorable to the party opposing summary judgment and that party must be given the benefit of all reasonable inferences." Id. In this case, only the interpretation of the contract between Jeffries and Aero is at issue, and the interpretation of the insurance policies between Jeffries and Aero. It is an appropriate case for summary judgment because the underlying facts are not disputed.
 
 
 41
 It seems clear that as between Jeffries and Aero, the latter agreed to indemnify Jeffries from all losses by reason of the operation of the truck on its route at the time of the accident. To the extent, then, that Jeffries, or anyone acting in its behalf, was liable for loss or damage by reason of the truck's collision with Corrigan, Aero agreed specifically to hold Jeffries (and anyone subrogated to its rights) harmless for "any losses from operation of the equipment." Such an agreement does not contravene the law and Interstate Commerce Commission regulations. Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 423 U.S. 28 (1975). Aero's hold harmless agreement is therefore enforceable. See also Indiana Insurance Co. v. Parr Trucking Services, L & B Express, 510 F.2d 490, 494 (6th Cir.1975).
 
 
 42
 Rebick argues that he, the driver, was, under Kentucky law, the employee of Jeffries and was therefore an insured under the Home policy. It is clear, however, that Rebick, who signed the one-way lease agreement for Aero, was cognizant that the agreement between the trucking companies provided that "any driver of the equipment ... will be employed by and responsible to the Owner or Lessor," and that Aero agreed to pay his wages, payroll taxes, and insurance when driving the leased truck. Rebick argues, then, that the agreement to this effect was invalid and also that the hold harmless agreement "has no effect." Appellant's Brief at 2. We disagree.
 
 
 43
 The authorities are in accord that an indemnification agreement in a one-way lease providing for the complete assumption of responsibility for the operation of the equipment by the lessee for the duration of the term of the lease is not violative of Title 49, C.F.R. Sec. 1057.4(a). Thus the Fifth Circuit in Allstate Insurance Co. v. Alterman Transport Lines, Inc., 465 F.2d 710 (5th Cir.1972), held that the regulation was not violated by an indemnification clause requiring a lessor in a one-way lease agreement to reimburse the lessee for all losses arising out of the operation of the lease. In support of this view the court pointed out that such an indemnification provision under which the parties freely contract as to which of them would ultimately be responsible for any damages caused a third party is not materially different from a contract of liability insurance covering a loss caused by the fault or negligence of the insured party. Similarly, the Fourth Circuit in Carolina Freight Carriers Corp. v. Pitt County Transportation Co., 492 F.2d 243 (4th Cir.1974), [cert. denied, 423 U.S. 983 (1975) ] ... [upholding] an indemnification provision comparable to the one now under consideration, ....
 
 
 44
 Jones Truck Lines, Inc. v. Ryder Truck Lines, Inc., 507 F.2d 100, 102 (6th Cir.1974), cert, denied, 423 U.S. 983 (1975).
 
 
 45
 Jones Truck Lines goes further to support a conclusion that Aero's indemnity agreement to Jeffries renders Aero liable to the extent of the $50,000 deductible payment it made to Rebick.
 
 
 46
 Applying this rule in the present case, we think it is clear from the indemnity contract that the parties intended that Ryder (indemnitee) should be reimbursed for all losses which it sustained resulting from its use of the equipment and while under its exclusive dominion and control. In unequivocal terms the contract provides that the equipment shall be in the "exclusive possession, control and use" of the lessee and that the lessee assumes full responsibility in respect to the equipment "to the public." The lessor, on the other hand, agrees to carry acceptable Liability and Property Damage insurance and "to reimburse and otherwise indemnify Lessee for any and all losses sustained by Lessee resulting from the use of the aforesaid equipment." Clearly this language is susceptible of no meaning other than the lessor was to indemnify the lessee for all losses sustained by it and resulting from its operation and use of the equipment, whether caused by the lessee's own acts of negligence or otherwise.
 
 
 47
 Jones Truck Lines, 507 F.2d at 103.
 
 
 48
 The difficult issue in this case relates to the balance of $391,652 paid by Transit to Rebick in settlement of the Corrigan claim, and this depends upon interpretation of the lease agreement and the insurance contracts. No party has questioned the application of Kentucky law as being controlling in this case.[6]
 
 
 49
 "Justice, fairness and the best practical result may best be achieved by giving controlling effect to the law of the jurisdiction which, because of the relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." Breeding v. Mass. Indem. & Life Ins. Co., 633 S.W.2d 717, 719 (Ky.1982). It appears that Kentucky's relation to the dispute is significant, and failure to raise any issue about controlling effect of Kentucky law precludes the parties from raising it. See Michigan Chemical Corp. v. American Home Assurance Co., 728 F.2d 374, 377 (6th Cir.1984).
 
 
 50
 "[W]e must remain sensitive to the nature and scope of our review function and will defer to the district court's interpretation of state law if that interpretation is permissible." Burdo v. Ford Motor Co., 828 F.2d 380, 383 (6th Cir.1987).
 
 
 51
 Rebick claims that under Kentucky law he is an employee of Jeffries no matter what the lease or the insurance policy may otherwise provide. Home responds that the characterization of Rebick as "not an employee" is part of a permissible and enforceable allocation of risk between Jeffries and Aero which poses no harm to the public.
 
 
 52
 Rebick relies almost exclusively on Home Indemnity Co. v. St. Paul Fire & Marine Ins. Co., 585 S.W.2d 419 (Ky.App.1979), to support his contention. That case involved a dispute between insurance companies to determine whether an independent truck operator/owner/driver was an "insured" under the lessee's policy despite language in the lease, similar to that employed here, denying that the operator was an employee of the lessee. It construed Interstate Commerce Commission (ICC) regulations applicable to the carriers involved and held that these regulations " 'create a type of statutory employment under which the franchised carrier becomes responsible for the negligence of the owner/operator, at least when he is engaged in the activities of the carrier.' " Id. at 423 (quoting Cox v. Bond Transportation, Inc., 53 N.J. 186, 249 A.2d 579, 589, cert. denied, 395 U.S. 935 (1969)). Rebick further argues that under Home Indemnity, he, as the operator of the leased truck, while engaged in the business of the lessee, Jeffries was an employee of Jeffries and thus was an insured under the liability contract of defendant Home.
 
 
 53
 The Kentucky Court of Appeals interpreted the policies "simultaneously with those [I.C.C.] regulations and with the lease agreement, not as isolated documents." 558 S.W.2d at 422. Nowhere, however, did the Kentucky court consider the interpretation placed upon these regulations by the Supreme Court in a similar context in Transamerican Freight, supra, with respect to validity of an indemnification agreement where an employee of the lessor was being "leased" to another carrier by an insured lessor. It was noted in Transamerican Freight that both the United States and the I.C.C. supported the validity of such an indemnity. See 423 U.S. at 42 n. 7.
 
 
 54
 Regardless of whether Rebick may, under Kentucky law, be deemed for some purpose to be the employee of Jeffries, which carried liability insurance to protect the public by reason of its negligence, we find no error in the conclusion reached by the magistrate and the district court that "Transit's policy does not provide primary insurance" to Aero under these facts whereby Aero "leases the auto [truck] and driver." We likewise find that there was no error in the conclusion, although it is a question not free from doubt, that Rebick, the "agent of Aero," was "not insured under Home's policy." Transit is, moreover, charged with knowledge that its insured, Aero, assumed the role of indemnitor to Jeffries with respect to just the sort of accident and loss due to the operation of the truck in question by Aero's agent, Rebick. In a case similar in many respects to the instant case, Mustang Transportation Co. v. Ryder Truck Lines, 523 F.Supp. 1097 (E.D.Pa.1981), aff'd mem., 688 F.2d 823 (3d Cir.1982), cert. denied, 459 U.S. 1127 (1983), a federal district court cited authority approved by this court in holding
 
 
 55
 While a lessee cannot free itself of its federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors or their insurers of otherwise existing obligations under applicable state tort law doctrines or under contracts allocating financial risk among private parties.
 
 
 56
 Carolina Casualty Insurance Co. v. Insurance Company of North America, 595 F.2d 128, 138 (3d Cir.1979).
 
 
 57
 49 C.F.R. Sec. 1057.4(a)(4) required that Ryder, as lessee, assume exclusive possession, control and use of the tractor-trailer as well as full responsibility for its operation, and under a provision of the one-way lease agreement, Ryder did just that.... Ryder would be liable to members of the public and to shippers who were damaged by the negligence of Crowder in the operation of the truck during that trip. That is, if a member of one of those groups (the public or shippers) were seeking to recover for him caused by the negligence of Crowder, Ryder would be vicariously liable as the statutory employer of Crowder pursuant to 49 C.F.R. Sec. 1057.4(a)(4). However, Ryder's responsibility to the public or to any shipper is not at issue in this case. Rather, the question now before me is how financial liability for the accident is to be divided ultimately amongst the lessor and the lessee and their insurers. As the Third Circuit pointed out in Carolina Casualty Insurance, supra, Sec. 1057.4 does not prohibit a lessor and lessee from agreeing between themselves to allocate financial risk in a certain manner. A clause appearing in the one-way lease agreement provided that Mustang and Crowder would indemnify Ryder for all losses resulting from the use of the tractor-trailer.
 
 
 58
 Mustang Transportation, 523 F.Supp. at 1103 (footnote omitted). Mustang Transportation also involved the question of insurance liability between insurance carriers of lessor and lessee truckers where lessor indemnified the lessee, as here, and its servant was operating the truck when the accident occurred. We believe Mustang to be the most analogous case to the factual situation here involved.
 
 
 59
 Home Indemnity Co. v. St. Paul Fire & Marine Insurance, 585 S.W.2d 419 (Ky.App.1979), first referred to American Fidelity & Casualty Co. v. Pennsylvania Casualty Co., 258 S.W.2d 5 (Ky.1953), as a case which "dealt with coverage as between two policies covering two ICC licensed carriers ... [and concluded that t]his has no bearing on our factual situation." Id. at 422. Home Indemnity, then, made it clear that it did not involve a dispute between insurance carriers covering two separate ICC licensed entities; rather, it involved one ICC licensed trucking company (L & B Express), the lessee of the truck involved in a Kentucky accident with a third party, and Adams, a non-ICC licensed independent trucking contractor-operator, who was the lessor of the truck involved. The suit in Home Indemnity was "to determine insurance coverage" between Home (and another insurance carrier, Reserve) on the one hand, which insured L & B Express, a licensed ICC carrier, and St. Paul, which insured Adams, who was not a licensed ICC carrier, to a limited extent. Id. at 420.
 
 
 60
 The question in Home Indemnity was whether Adams, the owner-lessor-driver of the truck in question and an independent contractor, was an "insured" within the meaning of the Home policy which covered the lessee carrier. The Kentucky court first looked at the I.C.C. regulations involved, but for a purpose not relevant to this case (whether an ICC carrier may "avoid liability by 'attempting to differentiate between uses of leased vehicles which are in the business of the carrier and those which are not' "). Id. at 422, 423. Citing only one case as authority,[7] and having cited another as contrary,[8] the Kentucky court held that Adams was "an employee of L & B for liability purposes, despite language in the insurance policies and the lease to the contrary." Id. at 423. It seems clear that the concern of the Kentucky court and the basis for this ruling under the applicable facts was a fear that to hold otherwise might expose the public to injury or damage from an ICC trucker leasing a truck which might be uninsured or unprotected. (Adams' insurance availability through St. Paul provided only "coverage ... on a pro rata basis with any other insurance.") Id. at 420. The Kentucky court in Home Indemnity also noted in particular "that the purpose of the policies ... was to comply with ICC regulations." Id. at 422. It emphasized its perception that the only way a carrier may avoid liability for "negligent operation of leased vehicles" is to remove ICC stickers on the vehicle. Id. at 423. The question in our case, however, is which of two policies bears the primary responsibility to a third party or the public where a leased vehicle is involved and the lessor has agreed to indemnify the lessee from loss by reason of the vehicle's operation.
 
 
 61
 Weeks v. Kelley, relied upon in Home Indemnity, recognized the "constitutional validity" of the ICC regulations, citing Supreme Court authority. It also recognized that an indemnification provision from the lessor ICC carrier, similar to the one involved in this case, to a lessee carrier was valid under ICC regulations as "determined by the United States Supreme Court in Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, [423 U.S. 28 (1975) ]." 377 A.2d 477 n. 2. Weeks, therefore, did not hold that the indemnity agreement between the parties was ineffectual and not binding even though Merrill, the lessee, may have been deemed to be liable to third parties and the public for the negligence of the lessor's driver.
 
 
 62
 Both the ICC regulations and the lease unequivocally mandate that the lessee assume "full responsibility" for the operation of the lease equipment which, by giving words their ordinary meaning, require the lessee to bear the financial consequences of any negligence in the operation of the leased equipment while being used in the lessee's business. Cf. Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 423 U.S. 28, ... (1975). In the absence of any indemnification agreement in the lease providing otherwise, the lessee remains contractually (as well as statutorily) responsible for injuries sustained by the travelling public as a result of the negligent operation of the equipment.
 
 
 63
 Weeks, 377 A.2d at 477 (emphasis added; footnote omitted, citation edited).
 
 
 64
 We are satisfied that the question in this case is distinguishable from that involved in Home Indemnity. There is no underlying danger or concern here but that either Home or Transit is liable for the liability growing out of negligent operation by Rebick of the leased truck. The insurance coverage is trucker insurance for ICC licensed operators, a factual situation not applicable in Home Indemnity. In a later related case involving the same parties, it was stated that Home Indemnity's "holding only has meaning in terms of the underlying facts upon which it is based." Davis v. Home Indemnity Co., 659 S.W.2d 185, 187 (Ky.1983). We find the decisions of the Kentucky magistrate and the Kentucky district judge to be persuasive and we give some deference to their determination of state law. See Harness v. Hartz Mountain Corp., No. 88-5791, slip op. at n. 1 (6th Cir. June --, 1989); C. Wright, Law of Federal Courts Sec. 58 (1976). Neither found Home Indemnity, heavily relied upon by Rebick, to be controlling, and we find this determination not to be erroneous. We are mindful, at the same time, of the strictures of Erie Railroad v. Tompkins, 304 U.S. 64 (1938), and our obligation to determine, as best we can, what the highest court of Kentucky could say on the particular facts of this case. See also, Bailey v. B & O Press Co., 770 F.2d 601 (6th Cir.1985).
 
 
 65
 We find the issues in this case to be difficult and close, especially in light of the relevant language in both policies that is not a model of clarity. We are not disposed to find as erroneous the decision of the district court holding Transit's policy did not, under the circumstances, provide primary coverage to Aero when it leased the truck and driver to Jeffries. We also conclude that it was not error to determine that there was no "true reciprocity" between the two policies because of differences in the policy language.
 
 
 66
 Accordingly, we AFFIRM the decision of the district court that Rebick is not entitled to recover from Home Indemnity.
 
 
 
 [1]
 The district court, however, denied Home's motion to add them as real parties-in-interest, and there has been no appeal from this decision
 
 
 [2]
 "Auto" is defined in Home's policy as "a land motor vehicle trailer or semi-trailer designed for travel on public roads but does not include mobile equipment [which is specialized equipment, off public road vehicles, etc.]"
 
 
 [3]
 "Trucker" is defined in Home's policy as, "any person or organization engaged in the business of transporting property by auto for hire."
 
 
 [4]
 An "automobile" is deemed to be the truck in controversy
 
 
 [5]
 "Automobile business" is deemed to be the trucking business thereunder
 
 
 [6]
 Home is asserted to be a New Hampshire corporation, headquartered in New York; Jeffries, the insured, is located in Evansville, Indiana; the policy was countersigned at Tulsa, Oklahoma, through a "producer" there. The lease agreement was between Jeffries of Indiana and Aero, an Ohio corporation located in Pennsylvania, and covered a trip originating in Arkansas to Ohio, its destination. Rebick is from Pennsylvania. Transit is nowhere reflected to be a Kentucky corporation or located in Kentucky. We find no language indicating that any agreement or policy is to be interpreted according to Kentucky law, but the accident did occur in Kentucky, and the suit was filed in Kentucky. The truck and trailer involved was owned by entities whose location and/or domicile is unknown but they are nowhere indicated to be Kentucky entities. At issue is the proper interpretation of the contracts between the insurer and insureds and the lease agreement between the insureds, none of whom are Kentucky "based."
 
 
 [7]
 Weeks v. Kelley, 377 A.2d 444 (Me.1977)
 
 
 [8]
 Wellman v. Liberty Mutual Insurance Co., 496 F.2d 131 (8th Cir.1974)